Tina Michelle **BENNETT, and H. Gary Bennett, her Husband, Plaintiffs,**

v.

**WHITE LABORATORIES, INC., a wholly owned subsidiary of Schering Corporation, Defendants.**

No. 92–1273–Civ–J–16.

United States District Court, M.D. Florida, Jacksonville Division.

· Dec. 23, 1993.

Robert F. Spohrer, Patricia M. Stanford, Spohrer, Wilner, Marees & Maxwell, P.A., Jacksonville, FL, for plaintiffs.

Linda Trummer–Napolitano, Law Offices of Henry R. Simon, White Plains, NY, Tracy Carlin, Foley & Lardner, Jacksonville, FL, for defendants.

## ORDER

SNYDER, United States Magistrate Judge.

This cause came to be heard on December 15, 1993, on Defendant White Laboratories, Inc.'s Motion Pursuant to Federal Rule of Civil Procedure 35 to Compel Physical and Mental Examinations of Plaintiff (Doc. # 29), filed on November 2, 1993 (hereinafter Motion). Plaintiffs' Amended Objection to Defendant's Motion to Compel Rule 35 Examinations (Doc. # 36) was filed on November 12, 1993 (hereinafter Plaintiffs' Objection).

### Background

Plaintiffs brought the instant suit in October 1992, alleging that, as a result of her mother ingesting the drug Dienestrol during her pregnancy, Plaintiff Tina Michelle Bennett suffers from a condition known as a vaginal stricture which has caused her various injuries. Of particular relevance to the

instant Motion is the fact she allegedly cannot engage in sexual intercourse without extreme pain. *See* Memorandum of Law in Support of Defendant's Motion to Compel Plaintiff to Appear for Physical and Mental Examinations (Doc. # 30), filed on November 2, 1993, at 2 n. 1.

After the instant action was removed to federal district court from state court, standard interrogatories were propounded to the parties touching upon scheduling considerations. Based upon the parties' answers, a Docket Control Order (Doc. # 10) entered on March 8, 1993, setting various deadlines and scheduling the case for trial during the trial term commencing on February 7, 1994. The trial subsequently was reset for the trial term commencing on March 7, 1994. Under the terms of the Docket Control Order, discovery was to be conducted so that the due date of the discovery would be no later than November 12, 1993.

On November 2, 1993, ten days before the close of discovery, the instant Motion was filed. In essence, Defendant White Laboratories, Inc. (hereinafter White) seeks to have Mrs. Bennett examined by William A. Little, M.D., a full Professor of Medicine and Chairman of the Department of Obstetrics and Gynecology at the University of Miami Medical Center, as well as by Raphael S. Good, M.D., a physician specializing in obstetrics, gynecology, and psychiatry.

Dr. Little's examination would consist of a "routine pelvic exam and evaluation of dyspareunia"[1] for the purpose of evaluating the degree of success of the surgery she has already undergone, as well as to determine what therapeutic options are available to her. Affidavit of William A. Little, M.D. (Doc. # 35), filed on November 12, 1993 (hereinafter Little Affidavit), ¶ 7 & ¶ 11. Dr. Good's examination would consist of a psychological interview for the purpose of assessing the nature and extent of any psychological factors to which Mrs. Bennett's complaints of dyspareunia may be attributable in whole or in part. Affidavit of Raphael S. Good, M.D.

---

1. Dyspareunia is defined as "[t]he occurrence of pain during sexual intercourse." *Stedman's Con-* *cise Medical Dictionary* 228 (1987).

(Doc. # 40), filed on December 6, 1993, at ¶ 6 & ¶ 7.

## Discussion

The instant Motion is governed by Rule 35, Federal Rules of Civil Procedure (FRCP), which provides, in pertinent part:

> When the mental or physical condition (including the blood group) of a party ... is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a suitably licensed or certified examiner.... The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.

That a party's physical or mental condition be "in controversy," and that "good cause" be shown for the examination, are more than perfunctory requirements—Rule 35 requires a "discriminating application" of these limitations. *Schlagenhauf v. Holder*, 379 U.S. 104, 121, 85 S.Ct. 234, 244, 13 L.Ed.2d 152 (1964). Before a physical or mental examination may be ordered, a greater showing must be made than for other types of discovery under the standard outlined in Rule 26, FRCP. *Robinson v. Jacksonville Shipyards, Inc.*, 118 F.R.D. 525, 527 (M.D.Fla.1988). Put another way, it is not enough that the elements of a claim or defense "could be better proved by evidence of a party's physical or mental condition." *Id.*

### A. Timeliness of the Motion

■ As an initial matter, the Court wishes to address Plaintiffs' contention that the Motion is untimely. *See* Plaintiffs' Objection at 9–10. As they note, the Defendants originally estimated they would need six months to complete discovery, and made no specific reference to the potential need for a physical or mental examination of Plaintiff. *See* Defendants' Answer to Standard Interrogatories (Doc. # 8), filed on February 26, 1993, at 6–7. In the Docket Control Order mentioned earlier, the parties were given eight months to complete discovery. *See id.* at 1.

Despite having two months more for discovery than requested, Defendant White waited until the eve of the discovery deadline to file the instant Motion. It is further noted the arbitration hearing that supposedly prompted White to seek the examinations in question occurred over four months prior to the filing of the Motion. *See* Notice of Entry of Arbitration Award (Doc. # 20), filed on June 24, 1993.

The timing of the request, moreover, is problematic. The instant case is scheduled for trial in March 1994, with a final pretrial conference set for February 1994. Two weeks before the pretrial conference, the parties are to meet and prepare the pretrial stipulation, which must be filed no later than a week before the pretrial conference. Under the best of circumstances, it will be difficult for both doctors to examine Mrs. Bennett, submit their reports to the parties, and answer expert interrogatories in a timely manner prior to trial. In the event the parties have agreed to permit their experts to be deposed, it is even less likely such could be completed before the date the pretrial stipulation is due. This is significant because the pretrial stipulation is to contain, among other things, a list of the depositions to be read at trial with the specific pages and lines to be read, and any objections to the introduction of same. Docket Control Order at 3.

Nevertheless, the Court concludes the timing of the Motion alone should not defeat it, if it is otherwise properly brought, and if the interests of the Plaintiffs can be protected adequately. Defendant White represented at the hearing that the granting of the Motion will not delay the trial, and it will be bound by that representation. Accordingly, White shall bear the risk of the scheduling problems it has created, and a favorable ruling shall not serve as the basis for seeking a continuance of the trial.

### B. Merits of the Motion

■ Unquestionably, Plaintiffs have placed Mrs. Bennett's physical condition, and more specifically the condition of her reproductive organs, in controversy. In the Amended Complaint (Doc. # 26), filed on September 20, 1993, it is alleged she has

"vaginal strictures and other permanent malformations of her reproductive organs" as a direct and proximate result of her mother's ingestion of the drug Dienestrol, which was developed, patented, manufactured and sold by the Defendants. *Id.* at 3. Based on these injuries she is seeking damages for "bodily harm, permanent injury, physical pain, mental pain and anguish, loss of enjoyment of life, extreme anxiety concerning the risk of contracting cancer," as well as for "expenses for medical care and treatment in an effort to cure and correct her injuries." *Id.* at 3–4. In addition, her husband is seeking damages for "loss of his wife's society, comfort and companionship." *Id.* at 7.

Furthermore, it appears "good cause" has been shown for a physical examination by a doctor of Defendant White's choosing. Although White apparently has had access to the pertinent medical records of Mrs. Bennett, as well as an opportunity to depose her treating physicians, the fact remains counsel for White has not had the benefit of an examination by a physician whose judgment counsel knows and respects. Such an examination could facilitate settlement of the case, should the findings of Defendant's physician prove favorable to Plaintiffs' claims. Alternatively, a physical examination may serve to narrow the issues for trial. For example, upon examining Mrs. Bennett, Defendant's expert may find, and thereby persuade counsel for White, that there is no medical basis for certain proposed defenses.

Most significant, however, is the fact White's defense will be severely prejudiced if it cannot obtain for trial the testimony of an expert who has examined Mrs. Bennett. When it comes to the credibility of a medical expert, there are few, if any, acceptable substitutes for a personal physical examination. Under the facts presented herein, Dr. Little or any other doctor could review literally thousands of medical records, but it would be difficult for his opinion to carry the weight it would if it were based on a personal examination, rather than on secondhand information. Plaintiffs implicitly concede this point

when they express their reluctance to limit their right of cross-examination on this subject.[2] *See* Plaintiffs' Notice of Agreement Regarding Cross–Examination of Defendant's Expert Witness (Doc. # 48), filed on December 15, 1993. The Court does not intend to diminish Mrs. Bennett's understandable concerns about the discomfort and embarrassment of a physical examination. However, as the foregoing discussion illustrates, there are substantial reasons for such an examination.

■ The Court is not convinced, however, Defendant White has made the requisite showing for a mental examination. Plaintiffs have not placed Mrs. Bennett's mental condition "in controversy" by their pleadings. Although the Amended Complaint seeks damages for "mental pain and anguish" as well as for anxiety regarding the risk of contracting cancer, such is not sufficient. *See Tomlin v. Holecek,* 150 F.R.D. 628, 630 (D.Minn.1993). Mrs. Bennett has averred she is not alleging she suffers from a psychological or psychiatric disorder as a result of exposure to Dienestrol. *See* Plaintiff's Objection, Exhibit A, ¶ 5. Accordingly, Plaintiffs represent no psychiatrists or psychologists will be called as witnesses at trial. *See* Plaintiff's Objection at 7.

Dr. Little recommends Mrs. Bennett be examined by an experienced psychiatrist "because of the close interrelationship between the psysiologic vaginal function and emotional and psychological factors." Little Affidavit at 3. Defendant White further suggested at the hearing the possibility of a psychological overlay to Mrs. Bennett's alleged inability to engage in intercourse. However, White has not affirmatively pled this in its answer. Moreover, its argument amounts to little more than speculation without some evidence tending to suggest psychological factors are playing a role in Mrs. Bennett's condition.

The Court notes Dr. Little's recommendation is without the benefit of having examined Mrs. Bennett. Should he find she in-

---

**2.** Incidentally, the Court is not convinced the proposed limitation on cross-examination renders the Motion moot with regard to the physical examination. Even without cross-examination

on the subject, the jury will be able to discern that Dr. Little has not examined Mrs. Bennett when he takes the stand and makes no reference to an examination.

deed has a physiologic condition which prevents intercourse and which is not treatable, no purpose would be served by subjecting her to a mental evaluation. In sum, while White's request may be "reasonably calculated to lead to the discovery of admissible evidence," Rule 26, FRCP, more is required under Rule 35—namely, good cause. At this juncture, Defendant White has failed to carry its burden of showing both that Mrs. Bennett's mental condition is "in controversy," and "good cause" for the contemplated mental evaluation.[3]

### C. Scope and Location of the Physical Examination

■ Plaintiffs object that the Motion does not adequately describe the manner and scope of the proposed physical examination. Plaintiffs' Objection at 7–8. Initially, it is noted the order must specify these conditions. See Schlagenhauf, 379 U.S. at 121 n. 16, 85 S.Ct. at 244 n. 16. Although the movant certainly must advise the Court regarding exactly what is requested, such was done in more detail at the hearing. After being advised by counsel for White as to what is contemplated, the Court finds that the phrase "routine pelvic examination" is sufficiently descriptive to delimit the scope of the intended examination. In addition, the parties are free to clarify further the scope of the physical examination as provided below. It is noted Dr. Little avers he is familiar with conditions like that of Mrs. Bennett, and has personally treated patients with such conditions. Little Affidavit at 1. The Court is confident his examination will be focused, and that he will use his experience with treating vaginal strictures to minimize her discomfort.

Mrs. Bennett's legitimate concerns regarding discomfort and pain may be further alleviated by having her physician present, if she wishes. See Warrick v. Brode, 46 F.R.D. 427, 428 (D.Del.1969). However, the Court will not require Defendant White to bear the expense of obtaining the presence of her doctor. Further, White has agreed to bear the costs incurred by Mrs. Bennett's husband or mother in accompanying her to Miami, and to bear the cost of furnishing anesthesia, which should help alleviate her apprehensions even further.

■ Of course, Plaintiffs object to compelling Mrs. Bennett to travel to Miami for the examination. In that regard, the Court has found authority for requiring a plaintiff to submit to an examination within the district where the action is pending, even if he or she resides in another district. See, e.g., Costanza v. Monty, 50 F.R.D. 75, 76 (E.D.Wis.1970). However, no authority has been found for requiring a plaintiff to travel outside the district in which the Court sits for such an examination. See Stuart v. Burford, 42 F.R.D. 591, 592–93 (N.D.Okla.1967). Therefore, the Court finds Mrs. Bennett should not be compelled to travel to Miami for the contemplated physical examination.

This leaves Defendant White with essentially two options, should Mrs. Bennett refuse to travel to Miami. White may elect to bring Dr. Little to Jacksonville for the examination. Since Plaintiffs have expressed interest in having Mrs. Bennett's physician attend the examination, perhaps her physician would be willing to make his own facilities available for the examination so that he may attend with minimal inconvenience to himself. Alternatively, White may select a suitably qualified physician practicing in the Jacksonville area. A review of the Jacksonville phone book reveals there are scores of physicians practicing obstetrics and gynecology in the Jacksonville area.

Accordingly, upon due consideration and having been advised of the premises, it is hereby

**3.** It is conceivable that, after examining Mrs. Bennett, Dr. Little may find her condition is treatable, and that there is reason to believe there is a psychological overlay to her complaints. While this would certainly amplify Defendant's showing of the necessity for a psychiat-ric evaluation, given the time constraints imposed by the approaching trial date, White may be foreclosed, as a practical matter, from further seeking such an evaluation. For the reasons already discussed, the Court finds White should suffer the consequences of such time constraints.

**ORDERED:**

(1) The Motion (Doc. #29) is **GRANTED** to the extent outlined below; otherwise **DENIED.**

(2) Plaintiff Tina Michelle Bennett shall submit to an examination by William A. Little, M.D., in Miami, Florida, or, if she prefers, by a suitably qualified doctor of White's choice in Jacksonville. In that regard, counsel for Defendant White shall prepare a notice as to the time, place, manner, conditions, and scope of the examination, and by whom it will be conducted. Such notice, along with the curriculum vitae of the examiner chosen, shall be filed no later than seven (7) days from the date of this Order. So far as is practicable, White shall accommodate Mrs. Bennett's schedule when setting the time for the examination. Thereafter, the Court will enter the Order contemplated by Rule 35 prescribing the time, place, manner, conditions, and scope of the examination, and by whom it will be made. The Court will defer entry of such order for three (3) days to permit Plaintiffs to object to the time the examination is scheduled or other matters not already addressed and resolved herein.

(3) To assist White in preparing the aforementioned notice, it is advised the Court is further prepared to rule as follows:

(a) If Mrs. Bennett elects to travel to Miami, White would bear the expense of the examination as well as all reasonable expenses incurred by her and her escort in travelling from Jacksonville to Miami and back, including lodging. However, if she elects to be examined in Jacksonville, White would bear only the cost of the examination;

(b) Mrs. Bennett, at her expense, may have her personal physician in attendance during the physical examination by the physician of White's choosing. White, of course, may elect to bear this cost if it wishes;

(c) the examination would consist of a routine pelvic examination for the evaluation of Mrs. Bennett's vaginal stricture and accompanying complaints of dyspareunia. No diagnostic x-rays would be taken, and anesthesia would be available during the examination so that it may be administered to Mrs. Bennett if such is medically appropriate and if she so requests.

(4) The parties are free to modify or further clarify the intended scope of the examination by stipulation, provided such is filed within seven (7) days of the date of this Order.

(5) The ruling herein shall not serve as a basis for seeking a continuance of deadlines previously established, including the trial date.

**DONE AND ORDERED.**