STATE of Missouri ex rel. C.S., Relator,

v.

The Honorable James R. DOWD, Presiding Judge of the Circuit Court for the City of St. Louis, Division 1, Respondent.

No. 69481.

Missouri Court of Appeals, Eastern District, Writ Division Three.

April 16, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 22, 1996.

Application to Transfer Denied June 25, 1996.

Kathleen L. Pine, Wendy W. Williams, William C. Dodson, Sandberg Phoenix & Von Gontard, PC, St. Louis, for relator.

Joseph M. Taylor, St. Louis, for respondent.

CRANE, Chief Judge.

Relator, defendant in the underlying battery action, seeks a writ of prohibition prohibiting respondent from enforcing his order requiring relator to be physically examined under Rule 60.01(a) to determine if and when he was circumcised. We issued a preliminary order in prohibition and we now make our preliminary order absolute.

J.C., plaintiff in the underlying action, filed an action against relator for damages for battery. In her second amended petition, she alleged that relator had non-consensual sexual intercourse with her sometime between November 23, 1992 and November 30, 1992 when she was a patient undergoing treatment for depression at Jewish Hospital. Relator filed an answer denying the assault and asserting affirmative defenses to the punitive damage claim.

In the course of discovery, relator submitted an interrogatory to J.C. in which he asked her to describe any physical characteristics which she claimed would identify relator as the person who assaulted her. J.C. answered, "[Relator] is not circumcized [sic]. [Relator] stated that in the south, they didn't circumcize [sic] boys. [Relator] was very polite and a smooth talker." In her interrogatories to relator, J.C. asked if relator was circumcised. Relator answered that he had been circumcised in Memphis, Tennessee as an infant, but did not have records. He also attested that he was a doctor of osteopathic medicine in a psychiatry residency at Washington University and that he performed various duties with respect to J.C.'s admission and treatment at Jewish Hospital over the course of the two months she was hospitalized. On November 9, 1992 he performed the admitting physical and took J.C.'s history. On November 14, he wrote an order for an OB consult with J.C., who was pregnant. On November 24 and 25, 1992 he was present for J.C.'s ECT therapy. He also averred that he saw and spoke with J.C. at various times in the lounge or hallway during her admission.

J.C. filed a motion to order relator to submit to a physical examination pursuant to Rule 60.01(a) claiming that "[a]s an element of her proof" she "alleges" that relator was uncircumcised at the time of the assault and that she "has reason to believe that [relator] is either uncircumcised or has undergone

circumcision after the date of the sexual assault. . . ." Relator filed a memorandum in opposition to the motion and J.C. filed a motion to compel. The trial court granted the motion after hearing oral argument.

Relator contends that respondent exceeded his jurisdiction when he ordered relator to submit to a physical examination because J.C. failed to establish that relator's physical condition was in controversy and that good cause existed to require the examination. We agree.

■ Generally parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter of a case. Rule 56.01(b)(1). However, courts may not order a physical examination of a party in an action unless the party's physical condition is "in controversy." Rule 60.01(a). The order may be made only on motion "for good cause shown." *Id.* Mere relevance is insufficient to satisfy these requirements:

> The rule's good cause and in·controversy requirements are not met by mere conclusory allegations of the pleadings nor by merely showing the desired information to be obtained from the examination is relevant. The rule requires a greater showing of need than under the other discovery rules and a greater showing of need than relevancy.

*Brooks v. Brown,* 744 S.W.2d 881, 882 (Mo. App.1988).

■ The pleadings alone are generally sufficient to meet the good cause and in controversy requirements where the condition is the subject matter of the suit or the basis for damages. A plaintiff, by asserting a mental or physical injury, "places that mental or physical injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury." *Schlagenhauf v. Holder,* 379 U.S. 104, 119, 85

S.Ct. 234, 243, 13 L.Ed.2d 152, 164 (1964).[1] Such examinations are usually ordered in cases in which the physical or mental condition which is the subject matter of the sought-after examination relates to an injury or to damages constituting the subject matter of the suit. *See State ex rel. McCloud v. Seier,* 567 S.W.2d 127, 128 (Mo. banc 1978). This rationale applies equally to a defendant who asserts his mental or physical condition as a defense to a claim. *Schlagenhauf,* 379 U.S. at 119, 85 S.Ct. at 243, 13 L.Ed.2d at 164; *see also State ex rel. McCloud,* 567 S.W.2d at 127–28; *Brooks,* 744 S.W.2d at 882. The purpose of the rule providing for medical examinations in actions involving the physical condition of a party is to eliminate uncertainty concerning the medical aspects of the cause and to permit the preparation of an intelligent and informed defense. *McCloud,* 567 S.W.2d at 127–28.

■ However, where the pleadings have not put the party's physical or mental condition into issue, "the party requesting the examination must affirmatively show 'that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination.' " *Brooks,* 744 S.W.2d at 882 (quoting *Schlagenhauf,* 379 U.S. at 118, 85 S.Ct. at 242–43, 13 L.Ed.2d at 164). "Mental and physical examinations are only to be ordered upon a discriminating application by the [trial] judge of the limitations prescribed by the Rule." *Schlagenhauf,* 379 U.S. at 121, 85 S.Ct. at 244, 13 L.Ed.2d at 165.

■ J.C. asserts that the condition of relator's penis is in controversy. Federal courts interpreting Rule 35(a), F.R.C.P., and state courts interpreting procedural rules similar to Rule 60.01(a) have held that for a condition to be in controversy, the condition

---

1. Interpreting Rule 35(a), F.R.C.P., which provides:

   When the mental or physical condition (including the blood group) of a party or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a suitably licensed or certified examiner or to produce for examination the person in the party's custody or legal control. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.

must bear directly on the proof of the elements of a cause of action or defense. The "in controversy" requirement "contemplates that a determination of the merits of an issue in the case within which the motion for physical or mental examination is made, may turn on, or be directly affected, by the physical or mental condition of the party sought to be examined." *Raymond v. Raymond,* 105 R.I. 380, 252 A.2d 345, 349 (1969). "In controversy" means the condition must be "directly involved in some material element of the cause of action or defense." *Gasparino v. Murphy,* 352 So.2d 933, 935 (Fla.App.1977).

In *Raymond* the Rhode Island Supreme Court found that plaintiff did not put his mental condition in controversy by bringing suit and refused to order a mental examination under Rhode Island Rule 35(a) to determine if the plaintiff had the mental capacity to sue in his own name and therefore had standing to appeal from the probate court. 252 A.2d at 348–49. The court characterized the issue of the plaintiff's capacity to act *sui juris* on appeal as the type of issue which is relevant to the underlying action, but which is not itself really and genuinely in controversy. *Id.* at 349.

In *Gasparino,* a wrongful death case, the court denied a motion requesting[2] a mental examination of the defendant who was accused of negligently using excessive force in attempting to arrest decedent because defendant's conduct, not his mental condition, was in controversy. 352 So.2d at 935. The court held that while the officer's mental state "may shed some light on *why* he acted as he did, it is not involved in either establishing the standard of care or in determining whether or not it has been violated." *Id.* at 935. (emphasis in original).

Other situations in which courts have limited the "in controversy" requirement are illustrated in the following cases. In *Wadlow v. Humberd,* 27 F.Supp. 210 (W.D.Mo.1939), the defendant in a libel action sought a physical and mental examination of the plaintiff, claiming that the results of such an examination would support the truth of the allegedly libelous article which mentioned the plaintiff's physical and mental conditions. The district court denied the request, holding that the plaintiff's mental and physical conditions were not so immediately and directly in controversy as to constitute the true issues: whether the defendant published the article and whether it was false. *Id.* at 212–13. The court held that the plaintiff's physical and mental conditions were only collaterally and incidentally involved. *Id.*

In *Bennett v. White Laboratories, Inc.,* 841 F.Supp. 1155 (M.D.Fla.1993), the district court denied the defendant drug manufacturer's request for a mental examination of the plaintiff. The court held that the plaintiff did not place her mental condition in controversy by seeking damages for mental pain and anguish as well as for anxiety regarding the risk of contracting cancer. The court further held that the plaintiff did not place her mental condition in controversy by suggesting that psychological factors may have played a role in her physical condition. Likewise, in *Sacramona v. Bridgestone/Firestone, Inc.,* 152 F.R.D. 428 (D.Mass.1993), the district court held that a plaintiff in a personal injury action did not place his life expectancy in controversy by seeking future damages so as to warrant an HIV blood test.

In *Robinson v. Jacksonville Shipyards, Inc.,* 118 F.R.D. 525 (M.D.Fla.1988), the district court rejected a request for a mental examination of an employee who filed an employment discrimination action claiming an emotional impact from a hostile work environment. The court held that plaintiff did not put her own mental condition into controversy because liability in Title VII claims depends on the behavior's impact on a "reasonable person," not on a particular plaintiff's sensibilities. *Id.* at 531. In an age discrimination case, the court of appeals vacated a district court order requiring a mental examination of the plaintiff employee. *Acosta v. Tenneco Oil Co.,* 913 F.2d 205 (5th Cir.1990). The court rejected the argument that the failure-to-mitigate defense placed

---

**2.** Plaintiff sought the examination pursuant to FLA R.CIV P. 1.360(a) which parallels Missouri Rule 60.01 and Federal Rule 35(a).

the employee's mental or physical condition in controversy. *Id.* at 209.

In *Gaglia v. Wells,* 112 A.D.2d 138, 490 N.Y.S.2d 829 (1985), the appellate court affirmed an order denying a physical examination[3] of the defendant after the defendant testified before trial that he had no recollection of the circumstances surrounding the accident. The court held the defendant was not asserting his loss of memory as a basis for absolving himself of liability, but simply testified as to his lack of recollection of the facts of the accident, and therefore had not put his physical condition in controversy. 490 N.Y.S.2d at 830.

▉ Relator did not plead his physical condition either in support of or in defense to a claim. Consequently, J.C. had the burden to make an affirmative showing that the good cause and in controversy requirements were met. *Brooks,* 744 S.W.2d at 882; *see also Schlagenhauf,* 379 U.S. at 118, 85 S.Ct. at 242–43, 13 L.Ed.2d at 164.

J.C. contends that the issue of circumcision is in controversy because 1) "it bears directly on the issue of whether relator raped [J.C.]," 2) "the condition of Relator's penis is an intimate detail not commonly known," and 3) J.C.'s "knowledge of this condition bears materially on the identity of the rapist."

▉ J.C. first argues that the issue of circumcision is in controversy because "it bears directly on the issue of whether relator raped [J.C.]" The underlying cause of action is battery. A battery occurs when there is an intended, offensive, bodily contact with another. *Martin v. Yeoham,* 419 S.W.2d 937 (Mo.App.1967); *Adler v. Ewing,* 347 S.W.2d 396 (Mo.App.1961). The objective elements of battery will not be proved by the results of the requested physical examination. Even if a physical examination disclosed that relator was not circumcised, this fact would not prove any of the elements of battery: that relator had intentional, offensive bodily contact with J.C. Conversely, relator's averment that he was circumcised does not directly absolve himself of liability. The elements of battery could be proved even if J.C. was mistaken about one of her observations of relator's physical appearance. The question of circumcision does not therefore directly relate to the proof or defense of the tort of battery. *See Wadlow,* 27 F.Supp. at 212–13.

▉ J.C. next argues that the question of circumcision is in controversy because J.C.'s "knowledge of this condition bears materially on the identity of the rapist." The results of a physical examination to determine whether relator was circumcised, unlike the results of a test matching DNA or a fingerprint to evidence found at the scene, would not identify defendant as the perpetrator of the battery.

J.C.'s reference to her knowledge of this circumstance ties in with her remaining argument that the issue of circumcision is in controversy because "the condition of Relator's penis is an intimate detail not commonly known." J.C. argues that she had knowledge of an *unusual* physical condition which she could only have obtained by personal and intimate observation. Being uncircumcised is a natural physical condition and is not an unusual physical characteristic such as an idiosyncratic tattoo or scar. J.C.'s claim to have knowledge of an intimate, but otherwise undistinctive, physical characteristic does not warrant a physical examination.

In this case the issue of relator's circumcision is a credibility issue. Examination results could be used to bolster or damage either party's credibility but would not resolve the true issues of the case: whether relator committed a battery. The issue of whether relator is circumcised is collateral and not "in controversy" as that term is used in Rule 60.01(a).

▉ Because J.C. has not shown that the issue of circumcision is "in controversy," we need not, therefore, reach the question of "good cause." J.C. was not entitled to an order compelling a physical examination of relator under Rule 60.01(a). A preliminary order in prohibition will be made absolute where a relator can establish that the trial court clearly exceeded its jurisdiction in or-

---

**3.** Plaintiff sought the examination pursuant to N.Y.Civ.Prac.L & R. 3121(a) which allows for such examinations when the information sought is in controversy.

dering an examination under Rule 60.01. *Brooks,* 744 S.W.2d at 882.

Our preliminary order in prohibition is made absolute.

PUDLOWSKI and KAROHL, JJ., concur.