Whitehead, J.
INTRODUCTION
Plaintiff Jane Doe (“Doe”) brought various claims against the defendants, among them, a claim of assault and battery against defendant Jeffrey Senechal (“Senechal”), arising from alleged sexual contact between Senechal and the plaintiff. Plaintiff now asks the Court to order a buccal swab paternity test of Senechal, at the expense of defendant Health & Education Services, Inc., pursuant to Mass.R.Civ.P. 35.
BACKGROUND
Doe, a ward of the State of Maine, was committed to Westlake Academy (“Westlake"), a secure intensive residential treatment program for mentally ill adolescents run by Health & Education Services, Inc. (“HES") under contract with the Massachusetts Department of Mental Health. Doe attended the Westlake program for approximately twenty-one months. During her last month at Westlake, Doe was allowed to make weekend visits home. Senechal, at the time an HES staff person, transported Doe to the bus station for these visits, with no other persons present. Doe alleges that Senechal engaged in sexual activity with her during these trips. After Doe’s transfer from Westlake, Doe learned that *316 she was pregnant, and she later gave birth to a child. Senechal does not acknowledge paternity of the child and refuses to undergo a paternity test (Plaintiffs Ex. 3). Doe testified at deposition that Senechal was the father of her child, because he was the only person with whom she was sexually involved at the time she could have become pregnant (Deposition excerpt, p. 225, delivered to the Court during argument). A memorandum prepared by the Assistant Commissioner of the Department of Mental Health notes that Doe told her mother that another man is the father of her child, but Doe denied to a Department investigator that she had sexual relations with this other man (Defendant’s Ex. B, at 3).
DISCUSSION
Pursuant to Mass.R.Civ.P. 35, the court may order a party to submit to a physical or mental examination “when the mental or physical condition (including the blood group) of a party ... is in controversy" and the movant has shown “good cause.” The moving parly, Doe, contends that the paternity test will expedite a resolution of the case because if the result is positive, Senechal’s liability will be established. The paternity test sought is a buccal swab, which Doe describes as a scraping of the inner cheek that is neither invasive nor uncomfortable.
Senechal opposes the motion as beyond this Court’s power pursuant to Mass.R.Civ.P. 35 and a violation of the Fourth Amendment. As to Mass.R.Civ.P. 35, he argues that the Commonwealth has not recognized its application to compel a personal injury action defendant to submit to paternity testing. He further argues that the test would lead only to immaterial and irrelevant information. With regard to the Fourth Amendment, Senechal argues there is no justification or case precedent in the context of a personal injury action for what he characterizes as a highly invasive and intrusive test.
II. Rule 35
Mass.R.Civ.P. 35 tracks the Fed.R.Civ.P. 35, as amended. See Reporter’s Notes to Mass.R.Civ.P. 35 (1973). The United States Supreme Court has ruled that to support a Fed.R.Civ.P. 35 order, the movant must satisfy “in controversy” and “good cause” requirements. Schlagenhauf v. Holder, 379 U.S. 120, 85 S.Ct. 234, 243 (1964). A condition for which an examination is sought may be placed “in controversy” in two ways: by the nature of the claim or defense in the pleadings, or by an affirmative showing that the condition is in controversy. Id. Some authorities have read Schlagenhauf as permitting one party to place the condition of another party in controversy. See Pearson v. Norfolk-Southern Ry. Co., Inc., 178 F.R.D. 580, 581 (M.D.Ala. 1998) (the mental or physical condition of the person may be placed in issue by another party); Williams v. Sanderson, 904 S.W.2d 212, 215 (Tex.Ct.App. 1995) (plaintiff may affirmatively show that the defendant’s condition is in controversy); 8A Wright, Miller & Marcus, Federal Practice and Procedure, §2234.1 (1994). But see Grober v. Dept. of Revenue, 956 P.2d at 1234 (paternity test of defendant denied where defendant placed his condition in controversy through an affirmative defense). The condition sought to be placed in controversy must bear directly on a determination of the merits of an issue and not a collateral matter. State ex rel. C.S. v. Dowd, 923 S.W.2d 444, 448 (Mo.App.E.D. 1996).
The movant for a Rule 35 examination must also establish good cause for the request. “Whether good cause is established depends on relevance and need.” Pearson v. Norfolk-Southem Ry. Co, Inc., 178 F.R.D. at 582. In determining need, the court must evaluate the movant’s ability to obtain the information sought by other means. Schlagenhauf v. Holder, 85 S.Ct. at 243.
In the instant case, Senechal challenges the relevance of a paternity test where paternity is not at issue, and where by case law, the test results alone cannot establish conclusively paternity or the occurrence of sexual intercourse. As to irrelevance, Senechal cites a New York case involving alleged sexual abuse in which the court held that a blood test to establish probable paternity was immaterial because proof of paternity was not required to prove sexual abuse and, in any event, was unnecessary because the subject child could testify at trial. In re Ivette D., 460 N.Y.S.2d 718, 721 (Fam.Ct. Kings Co. 1983). As to the probative value of a paternity test, Senechal cites a Massachusetts decision holding that blood tests for paternity are not conclusive of paternity and do not constitute evidence of intercourse. Commonwealth v. Beausoleil, 397 Mass. 206, 220 (1986).
This court finds that the plaintiff has met her burden of affirmatively placing in controversy the defendant’s condition as father of her child by way of her deposition. The deposition specifically asserts that Senechal engaged in sexual intercourse with the plaintiff and identifies him as the only possible father of her child.[2] Contrast R.R.K. v. S.G.P., 400 Mass. 12, 19 (1987) (Liacos, J., concurring) (motion judge’s order of blood test to determine defendant’s paternity improper where supported only by plaintiffs unsworn, unverified complaint). While it is correct that a paternity test does not respond precisely to the claim of assault and battery, the results of such a test certainly would go far in determining Senechal’s liability and cannot be considered as collateral in nature. In combination with the plaintiffs testimony, a positive test result would tend to support the defendant’s liability, although a negative result would not preclude liability. But see State ex rel. C.S. v. Dowd, 923 S.W.2d at 449 (physical exam to determine if defendant was uncircumcised, as plaintiff alleged, not ordered in batteiy claim for nonconsensual sex, because exam results would go only to credibility and not resolve the issue of whether defendant committed battery). The plaintiff has also shown good cause for the examination, because without the evidence relative to paternity there is no objective basis by which to evaluate her claim.
*317 II Fourth Amendment
With respect to Senechal’s Fourth Amendment claim, the court is uncertain where to begin its analysis. It is not altogether clear that the plaintiffs request for testing implicates the Fourth Amendment at all. However, the court will assume that judicial enforcement of a request for testing does constitute “state action” sufficient to invoke Fourth Amendment protections. In order to satisfy the Fourth Amendment, a test which includes the taking of bodily fluids (or tissues) must be “reasonable.” Skinner v. Railway Labor Executives’ Ass’n, 489 U.S. 602, 109, S.Ct. 1402, 1414 (1989). A particular search is reasonable where its promotion of legitimate government interests outweighs its intrusion on the individual’s privacy interests. Neither the existence of “probable cause” nor “individualized suspicion” is an absolute prerequisite to the conclusion that a search is “reasonable” within the meaning of the Fourth Amendment. Skinner at 1417.
In any event, here the deposition testimony of the plaintiff establishes probable cause to believe that the requested sample will produce a positive result. She states that she has had a child and that the defendant was the only person with whom she had intercourse during the period when the child was conceived. A positive result will significantly aid the truth-seeking process by providing strong confirmatoiy evidence of the plaintiffs claim. Indeed, even a negative result will aid the truth-seeking process, because, although not ruling out the claim altogether, it will significantly undermine the plaintiffs credibility. The government has a strong interest in ensuring the integrity of the truth-seeking process in its courts. The intrusion of the buccal swab test upon the physical integrity of Senechal is minimal. The court concludes that, on balance, the request for testing is “reasonable,” and an order for testing comports with the Fourth Amendment. See generally Grober v. Department of Revenue, 956 P.2d, 1230, 1234, n. (Alaska, 1998) (properly executed civil discovery will generally comport with the “reasonableness” requirements of the Fourth Amendment).
The court notes that, even if Senechal possessed a Fourth Amendment right to refuse the requested testing, the fact of his refusal likely would be admissible at trial, and the jury would be permitted to draw a negative influence against him from such evidence. Compare Quintal v. Commissioner of the Department of Employment and Training, 418 Mass. 855, 861 (1994). (where parly in civil litigation invokes Fifth Amendment right against self-incrimination, the fact finder may draw inferences against him.)
ORDER
For the foregoing reasons, the Court ALLOWS the plaintiffs motion to compel a buccal swab paternity test of defendant Senechal. Plaintiff shall bear the expense of testing.

 The Court is aware that the plaintiff is reported to have told her mother that another man, “the man on the bus,” was the father of her child, and yet allegedly told an investigator she did not have sexual relations with this man. It is not necessary that the movant prove her case on the merits in order to meet the requirements for a Rule 35 examination. Schlagenhauf, 85 S.Ct. at 243.