JANE DOE vs. JEFFREY SENECHAL.

Essex. January 7, 2000. - March 20, 2000.

Present: MARSHALL, C.J., ABRAMS, LYNCH, GREANEY, IRELAND, SPINA, & COWIN, JJ.

*Rules of Civil Procedure. Practice, Civil,* Discovery. *Paternity. Evidence,*
Paternity, Scientific test, Relevancy and materiality. *Constitutional Law,*
Privacy, Search and seizure.

In a civil action in which the plaintiff asserted claims for assault and battery,
negligence, negligent and intentional infliction of emotional distress, and
violation of her State and Federal Constitutional rights, arising from al-
leged tortious sexual contact occurring while the plaintiff was a court-
committed patient at a residential treatment facility for mentally ill
adolescents, a Superior Court judge properly within his discretion allowed
the plaintiff's motion pursuant to Mass. R. Civ. P. 35 (a) to compel the
defendant to submit to a medical examination to determine whether he was
the father of the plaintiff's child, conceived at the relevant time, where the
issue of paternity (or nonpaternity) was relevant to the plaintiff's claims
and was thus "in controversy," and where the plaintiff established "good
cause," inasmuch as there was no less intrusive discovery method. [81-84]
The prohibition of the Fourth Amendment to the United States Constitution
against unreasonable searches and seizures had no application to a
discovery order in civil litigation between private litigants compelling a
medical examination. [84-85]

CIVIL ACTION commenced in the Superior Court Department on
November 14, 1997.

A motion to compel a physical examination of the defendant
was heard by *Howard J. Whitehead,* J.

The Supreme Judicial Court granted an application for direct
appellate review.

*H. Charles Hambelton (Kimberly M. McCann* with him) for
the defendant.

*Jocelyn M. Sedney* for the plaintiff.

MARSHALL, C.J. We consider in this case a challenge to an
order entered by a judge in the Superior Court pursuant to

Mass. R. Civ. P. 35 (a), 365 Mass. 793 (1974),[1] that the defendant[2] undergo a physical examination to determine paternity. The case concerns allegations by the plaintiff, Jane Doe, that Jeffrey Senechal, a staff person, engaged in sexual conduct with her while she was a court-committed patient at an intensive residential treatment facility for mentally ill adolescents, West-lake Academy (Westlake). Doe became pregnant and gave birth to a child. She has brought various claims against the owner of the facility and various other employees arising from Senechal's alleged tortious sexual contact with her.[3] Senechal has denied any sexual contact with Doe, and denies paternity of the child.

In January, 1999, Doe moved, pursuant to rule 35, for an order requiring Senechal to undergo a buccal swab paternity test.[4] Senechal opposed the motion on two grounds. First, he claimed that any paternity testing would violate his privacy rights under the Fourth Amendment to the United States Constitution. Second, he argued that his condition as the puta-tive father of the child was not "material" to the case and the test could not be ordered pursuant to rule 35. A judge in the Superior Court disagreed, and ordered Senechal to undergo the paternity test.

Senechal filed a petition before a single justice in the Appeals Court, pursuant to G. L. c. 231, § 118, seeking interlocutory review of and relief from that order. The single justice denied

---

[1]Rule 35 (a) of the Massachusetts Rules of Civil Procedure, 365 Mass. 793 (1974), provides:

> "When the mental or physical condition (including the blood group) of a party . . . is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a physician . . . . The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person and persons by whom it is to be made."

[2]Other defendants are not parties in this appeal.

[3]Doe seeks recovery for claims of assault and battery against Senechal, as well as claims of negligence, negligent infliction of emotional distress, intentional infliction of emotional distress, and violation of her State and Federal civil rights against all of the defendants.

[4]A buccal swab paternity test involves the rubbing of a swab on the interior surface of the cheek to obtain cells that are then evaluated, using PCR (poly-merase chain reaction) for deoxyribonucleic acid (DNA) analysis.

the relief, but permitted Senechal to take an interlocutory appeal. We granted Doe's application for direct appellate review. We now affirm the Superior Court order.

1. *Facts.* Doe was committed to Westlake, a secure intensive residential treatment facility for mentally ill adolescents operated by Health & Education Services, Inc. (HES), under a contract with the Department of Mental Health (department). Doe had been the victim of severe sexual and physical abuse. She was committed to Westlake for approximately twenty-one months, beginning in February, 1993. During her last month at the facility she was permitted to leave periodically for weekend visits with her parents in Maine. Senechal, an employee of HES, drove Doe to the bus station.[5] Doe alleges that in the course of escorting her to the bus station Senechal engaged in various sexual activities with her, including intercourse. After Doe was transferred from Westlake to a less secure facility in Maine, she learned she was pregnant. Doe identified Senechal as the father. She testified at deposition that he was the only person with whom she had sexual intercourse during the relevant time period.[6]

On discovering that Doe was pregnant, the Maine Department of Mental Health reported the matter to the department, which investigated the case, focusing on the circumstances surrounding three specific dates on which Doe alleged she had sexual intercourse with Senechal. The department concluded that it was not possible that any sexual contact had occurred on one such date, and it was unlikely that sexual intercourse occurred on a second. However, for one date, June 18, 1995, the department determined that Senechal had been alone with Doe, but that, because there were no records available from Westlake concerning the length of time they were alone together, the department could not determine beyond a "reasonable doubt" whether sexual intercourse could have occurred.[7] The department could not, therefore, substantiate the allegation. It

[5]In programs operated by or under contract with the department, single-person escorts are discouraged for the safety of both residents and staff, and to prevent false allegations with respect to or by either.

[6]The child has been adopted by a third party. According to Doe's appellate counsel, the child's adoptive parents are willing to make the child available for purposes of testing to establish paternity.

[7]June 18, 1995, according to the department's report, was "within reason" as a conception date of Doe's child. Senechal argues here that the date of conception cannot be determined with certainty because Doe has not produced

nevertheless recommended that it would be "prudent" for Senechal to agree to take part in a paternity test to determine whether he is the father of the child. Senechal refused.

2. *Mass. R. Civ. P. 35.* Senechal first argues that the judge in the Superior Court abused his discretion by ordering a physical examination under rule 35. That rule permits a judge to order any party to submit to a physical examination by a physician only if his physical condition is "in controversy" and if the moving party has established "good cause" for the test to proceed. See note 1, *supra.* Senechal claims that neither prerequisite is met in this case because the question of paternity does not bear directly on the proof of any of the elements of Doe's several causes of action. Doe responds that her sexual contact with Senechal bears directly on her claim of assault and battery against him, as well as on her various claims for damages.

Parties to a civil action generally "may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." Mass. R. Civ. P. 26 (b) (1), 365 Mass. 772 (1974). Rule 35 (a) by its express terms is more restrictive, requiring a greater showing of need: in every case where a party requests a mental or physical examination, a judge "must decide, as an initial matter," whether the party "has adequately demonstrated the existence of the Rule's requirements of 'in controversy' and 'good cause.' " *Schlagenhauf* v. *Holder,* 379 U.S. 104, 118-119 (1964) (discussing Federal counterpart to rule 35).[8] In addition, the requirements of rule 35 are not met "by mere conclusory allegations of the pleadings — nor by mere relevance to the case — but require an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering

certain records in response to his discovery requests. Senechal did not raise this issue in the Superior Court and we therefore do not address it. See *Oforio* v. *Department of Mental Health,* 408 Mass. 605, 612-613 (1990), *S.C.,* 411 Mass. 657 (1992).

[8]The language of rule 35 (a) tracks the corresponding Federal rule. Reporters' Notes to Mass. R. Civ. P. 35, Mass. Ann. Laws, Rules of Civil Procedure at 26 (Lexis 1997). In construing our rules of civil procedure, we are guided by judicial interpretations of the cognate Federal rule "absent compelling reasons to the contrary or significant differences in content." *Van Christo Advertising, Inc.* v. *M/A-COM/LCS,* 426 Mass. 410, 414 (1998), quoting *Rollins Envtl. Servs., Inc.* v. *Superior Court,* 368 Mass. 174, 179-180 (1975).

each particular examination." *Id.* at 118. See *State ex rel. C.S.* v. *Dowd*, 923 S.W.2d 444, 447-448 (Mo. Ct. App. 1996).

A matter may be placed "in controversy" in a civil action by the nature of the claim or defense; for example, a plaintiff in a negligence action who asserts mental or physical injury, or a defendant who asserts his mental or physical condition as a defense to a claim, such as an insanity defense to a divorce action. See *Schlagenhauf* v. *Holder, supra* at 119, and cases cited. Here, Senechal claims he did not assert his physical "condition," paternity, in support of his defense; rather his condition was placed in issue by Doe. In such circumstances, Doe is required to make an "affirmative showing" that Senechal's physical condition is in controversy and that there was good cause for the examination requested.[9] *Id.* at 119-120.

The motion judge correctly concluded that Doe made the necessary showing that Senechal's condition as the putative father of her child was "in controversy." Doe has alleged that Senechal engaged in tortious sexual conduct with her, including a claim of assault and battery against him, which he has denied. If Doe were to demonstrate through reliable evidence that Senechal is the father of a child conceived while she was under his supervision, she would prove, at least, that an intentional touching had taken place, one element of that claim. See *id.* at 118-119 (matter is "in controversy" if it relates directly to the proof or defense of the underlying cause of action). Cf. *State ex rel. C.S.* v. *Dowd, supra,* and cases cited.[10] Doe has also made an affirmative showing that Senechal had the opportunity to engage in sexual intercourse with her: they were alone on at

[9]The Supreme Court of the United States in *Schlagenhauf* v. *Holden,* 379 U.S. 104, 119 (1964), provides further guidance on this point:

> "This does not, of course, mean that the movant must prove his case on the merits in order to meet the requirements for a mental or physical examination. Nor does it mean that an evidentiary hearing is required in all cases. This may be necessary in some cases, but in other cases the showing could be made by affidavits or other usual methods short of a hearing. It does mean, though, that the movant must produce sufficient information, by whatever means, so that the [trial] judge can fulfill his function mandated by the Rule."

[10]In *State ex rel. C.S.* v. *Dowd,* 923 S.W.2d 444, 449 (Mo. Ct. App. 1996), the court held that a physical examination to determine whether a defendant had been circumcised was not "in controversy" in a battery case. The court reasoned that "[e]ven if a physical examination disclosed that [the defendant in the underlying action] was not circumcised, this fact would not prove any

least one occasion during the relevant period, June 18, 1995, when Senechal drove her to the bus station. That date, the most likely date of any sexual activity between them, corresponds with an approximate date of conception of Doe's child. At her deposition, Doe identified Senechal as the only possible father of her child. Her testimony directly counters Senechal's denial of any sexual activity between them, as well as his denial of paternity. As the motion judge correctly observed, while a paternity test cannot substantiate completely Doe's claim of assault and battery, the results of such a test cannot be viewed as collateral.

The issue of Senechal's paternity also bears substantially on Doe's claims for damages for the resulting physical injury from the alleged improper sexual contact, her pregnancy, and any emotional distress she has and will continue to have as a result of the pregnancy. Her claims therefore relate not only to the tortious sexual assault (intercourse), but to her pregnancy and the birth of her child. Doe also observes that Senechal has asserted in his pleadings that another man is the child's father,[11] and has alleged as an affirmative defense that Doe's damages were "the actions of a third person over whom the Defendants did not exercise control." These pleadings lend further support to the conclusion that Senechal's condition as the father of Doe's child is "in controversy." Cf. *Vargas* v. *Vargas*, 54 A.D.2d 590 (N.Y. 1976) (claim that defendant secured plaintiff's consent to marriage by false representation that he was cause of her pregnancy placed issue of paternity in controversy); *State ex rel. Keithline* v. *Jennings*, 463 P.2d 690, 692 (Okla. 1970) (order to compel blood testing appropriate where petitioner claimed defense of fraud in inducement of contract he signed for child support, but later claimed he had relied on deceit of mother).

Doe has also satisfied her affirmative burden that there is "good cause" to compel Senechal's examination. The judge concluded that, without evidence that Senechal is the child's biological father, "there is no objective basis by which to evaluate her claim." We agree. Although there is evidence from

of the elements of battery: that [he] had intentional, offensive bodily contact with [the plaintiff in the underlying action]." *Id.*

[11]Doe reportedly told her mother that another man, "the man on the bus," was the father of her child, while she allegedly told an investigator that she did not have sexual relations with such a man.

which a jury could conclude that Senechal had the opportunity to inflict the tortious injury, Doe has no other source from which to draw her proof of improper sexual contact, other than her own testimony. Cf. *Marroni* v. *Matey*, 82 F.R.D. 371, 372 (E.D. Pa. 1979) (not good cause for examination if plaintiff could obtain information by other discovery methods that would be less intrusive on defendant's privacy interests); 8A C.A. Wright, A.R. Miller, & R.L. Marcus, Federal Practice and Procedure § 2234.1 (2d ed. 1994) ("The court may decide to refuse the examination if the information sought is available from other sources"). Particularly where Senechal has denied that he ever engaged in sexual conduct with Doe, confirmation from a DNA profiling method that is recognized as a scientifically valid methodology, see *Commonwealth* v. *Vao Sok*, 425 Mass. 787, 799 (1997), would go far in assisting the trier of fact to determine Senechal's liability, as the motion judge observed.

A judge has broad discretion in determining whether to order a physical examination pursuant to rule 35. Absent an abuse of that discretion, we shall not reverse a judge's decision on that or other matters of discovery. There was none here.

3. *Fourth Amendment.* Senechal argues that the prohibition of the Fourth Amendment against unreasonable searches and seizures is an independent ground for quashing the judge's discovery order because he has a right to be free from "government sponsored intrusions into the integrity" of his own body.

The civil litigation here concerns private litigants, and Senechal points to no authority for his proposition that the Fourth Amendment has any application in this context. See *Bowerman* v. *MacDonald*, 431 Mich. 1, 19 (1988) (defendant did not cite and court was unaware of "any cases in which otherwise properly constituted discovery in a civil action has been held to constitute a violation of the Fourth Amendment").[12] To the contrary, in *Schlagenhauf* v. *Holder*, *supra* at 114, the

[12]In civil cases the constraints of the Fourth Amendment do apply to government litigants in certain circumstances, such as subpoenas duces tecum issued in the course of investigation by grand juries or administrative agencies. See, e.g., *United States* v. *Dionisio*, 410 U.S. 1, 11 (1973); *See* v. *Seattle*, 387 U.S. 541, 542-544 (1967) (city fire department inspector may not enter and inspect commercial warehouse as part of routine, periodic city-wide code-compliance canvass without warrant and without probable cause to believe violation of any municipal ordinance existed); *United States* v. *Morton Salt Co.*, 338 U.S. 632, 652-653 (1950) (Fourth Amendment requires administrative agency subpoena of corporate books or records be limited, relevant, and specific). See

Supreme Court made no mention of a possible Fourth Amendment constraint, holding that "Rule 35 . . . is free of constitutional difficulty."

In any event, the physical examination ordered here — the buccal swab paternity test — would meet the standard of reasonableness.[13] The cells to be extracted from Senechal will provide test results that will significantly aid Doe in establishing liability, or may substantially exclude Senechal as the father of her child. In short, the "reasonable expectation is that the test results will strongly point to, but not conclusively prove" the answer to whether Senechal caused Doe's pregnancy. *Matter of a Grand Jury Investigation*, 427 Mass. 221, 226 (1998).

*Order affirmed.*

---

also *Skinner* v. *Railway Labor Executives' Ass'n*, 489 U.S. 602, 613-614 (1989).

[13]There are a scattering of reported decisions where courts have declined to decide whether the Fourth Amendment applies to civil discovery orders among private litigants, but have nevertheless considered the "reasonableness" of the discovery order. See, e.g., *Bowerman* v. *MacDonald*, 431 Mich. 1, 19 (1988). See also *United States* v. *International Business Machs. Corp.*, 83 F.R.D. 97, 103 (S.D.N.Y. 1979) (assuming Fourth Amendment applies to civil discovery subpoena and applying reasonableness test); *Ambassador College* v. *Goetzke*, 244 Ga. 322, 325 (1979) (Hill, J., concurring), cert. denied, 444 U.S. 1079 (1980) (court should consider in "proper" case whether discovery is being used by civil litigants pursuing unsubstantiated claims in violation of rights protected by Fourth Amendment, and whether probable cause requirement of Fourth Amendment is applicable to civil discovery orders).