**Robert J. SACRAMONA, Plaintiff,**

v.

**BRIDGESTONE/FIRESTONE, INC., the Budd Company, the Tire and Rim Association, Inc., Defendants.**

**Civ. A. No. 91–11255–GN.**

United States District Court, D. Massachusetts.

Dec. 3, 1993.

Michael K. Gillis, Gillis & Bikofsky, P.C., Newton Centre, MA, for plaintiff.

Francis H. Fox, Kenneth J. De Moura, Bingham, Dana & Gould, Boston, MA, for defendant Bridgestone/Firestone, Inc.

Mark Karsner, Wynn & Wynn, Raynaham, MA, Michael W. Duffy, Clausen Miller Gorman Caffrey, Chicago, IL, for Budd Co.

Robert C. Martin, Avery, Dooley, Post & Avery, Belmont, MA, for Tire & Rim Association, Inc.

## ORDER RE: DEFENDANT'S, THE BUDD COMPANY, MOTION TO COMPEL PLAINTIFF TO SUBMIT TO A BLOOD TEST (DOCKET ENTRY # 90)

BOWLER, United States Magistrate Judge.

On July 23, 1993, defendant The Budd Company ("Budd") filed a motion to compel plaintiff Robert J. Sacramona ("plaintiff") to submit to a blood test. (Docket Entry # 90). Defendant Bridgestone/Firestone, Inc. ("Bridgestone") filed a memorandum in support of Budd's motion to compel (Docket Entry # 90). (Docket Entry # 98).[1]

On September 24, 1993, this court held a hearing and took the motion to compel (Docket Entry # 90) under advisement.

### BACKGROUND

This personal injury action arises out of an accident occurring on May 4, 1988, while plaintiff was mounting a tire on a rim at

---

1. On August 11, 1993, the parties stipulated to extend the time for plaintiff to file a response to Budd's motion to compel, up to and including August 13, 1993. (Docket Entry # 92). Plaintiff filed his opposition to Budd's motion to compel on August 13, 1993. (Docket Entry # 93).

Bridgestone filed a motion for leave to file a memorandum in support of Budd's motion to compel (Docket Entry # 90) on August 23, 1993. (Docket Entry # 98). On September 9, 1993, Budd filed a motion for leave to file a reply brief to plaintiff's opposition (Docket Entry # 93). (Docket Entry # 104). By endorsed orders of September 24, 1993, this court granted Bridgestone leave to file its memorandum in support and Budd leave to file its reply brief.

Economy Mobil in Pawtucket, Rhode Island. (Docket Entry ## 1 & 6). Plaintiff allegedly sustained serious and permanent injuries from an explosion resulting from the mismatching of the tire, manufactured by Bridgestone, on the rim, manufactured by Budd. (Docket Entry ## 1, 6 & 72).

Plaintiff seeks damages from Budd and Bridgestone (collectively: "defendants") for his future lost wages, medical expenses and disability. (Docket Entry ## 1 & 6). Defendants contend that since plaintiff makes claims for future damages, plaintiff placed his life expectancy in issue. (Docket Entry ## 91 & 113).

During discovery defendants learned that plaintiff was a former drug abuser, having injected drugs intravenously and shared hypodermic needles. (Docket Entry # 91, Ex. A & B). In addition, plaintiff admits to being bisexual and engaging in unprotected homosexual activity. (Docket Entry # 91, Ex. A & B). Plaintiff's treating physician, Dr. Patrick Cimino, encouraged plaintiff to submit to a test for HIV[2] due to high risk factors which make plaintiff substantially more likely to acquire AIDS.[3] (Docket Entry # 91, Ex. B). Plaintiff, however, has never taken a blood test to determine his HIV status. (Docket Entry ## 91 & 113).

Defendants argue that information obtained from plaintiff's blood test is essential to their ability to defend against plaintiff's alleged future damages. (Docket Entry ## 91 & 113). Defendants further contend that if plaintiff is HIV positive, plaintiff's life expectancy will be dramatically lower than the life expectancy a person not infected with the virus. (Docket Entry ## 91 & 113). Thus, defendants contend, plaintiff's HIV status bears on his life expectancy and is relevant to determining future damages. (Docket Entry ## 91 & 113).

Defendants further argue that since plaintiff placed his life expectancy in issue, it would not be prejudicial or burdensome to require plaintiff to take a blood test for HIV. (Docket Entry # 91). Plaintiff refuses to submit voluntarily to a blood test citing his statutory and constitutional right to privacy. (Docket Entry # 103). Plaintiff asserts that taking such a test will cause him to suffer unjust oppression, embarrassment and annoyance. (Docket Entry # 94). In lieu of compelling plaintiff to submit to a blood test to determine his HIV status (Docket Entry # 90), defendants alternatively request to preclude plaintiff from introducing evidence at trial of his life expectancy or future damages. (Docket Entry ## 91 & 113).

### DISCUSSION

Rules 26 and 35, Fed.R.Civ.P., provide the basis for Budd's motion to compel (Docket Entry # 90).

■ Rule 26(b)(1), Fed.Rule Civ.P. ("Rule 26(b)(1)"), provides that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." Discovery is therefore relevant "if there is *any* possibility that the information sought may be relevant to the subject matter of the action." *Gagne v. Reddy*, 104 F.R.D. 454, 456 (D.Mass.1984). Moreover, this court has substantial leeway in managing pretrial matters, particularly decisions pertaining to the scope of discovery. *Navarro de Cosme v. Hospital Pavia*, 922 F.2d 926, 930 (1st Cir.1991); *Santiago v. Fenton*, 891 F.2d 373, 379 (1st Cir.1989) (civil rights action; parties generally entitled to broad discovery).

Notwithstanding, a party "ought not to be permitted to use broadswords where scalpels will suffice, nor to undertake wholly exploratory operations in the vague hope that something helpful will turn up." *Mack v. Great Atlantic & Pacific Tea Co.*, 871 F.2d 179, 187 (1st Cir.1989) (recognizing that 1983 amendments to the Federal Rules of Civil Procedure greatly increased court's ability to curb excesses); *see also Public Service En-*

---

2. HIV is defined as "human immunodeficiency virus" which is associated with AIDS. *See* Random House Dictionary of the English Language 908 (2d ed. 1987).

3. AIDS is defined as "[a]cquired immune deficiency syndrome, a breakdown of the immune system that renders individuals vulnerable to a variety of serious opportunistic diseases." Melloni's Illustrated Medical Dictionary 11, (2d ed. 1985).

*terprise v. Philadelphia Electric*, 130 F.R.D. 543, 551 (D.N.J.1990) (discussion of Rule 26(b)(1)(iii)); *Marker v. Union Fidelity Life Insurance Co.*, 125 F.R.D. 121, 125 (M.D.N.C.1989) (court denied detailed information request). Under Rule 26(b)(1)(iii), this court may limit the scope of relevant discovery if such discovery is "disproportionate to the individual lawsuit as measured by such matters as its nature and complexity" and the importance of the issues at stake. Notes of Advisory Committee, 1983 Amendment, Fed.R.Civ.P. 26.

Rule 35(a), Fed.Rule Civ.P. ("Rule 35(a)"), expressly governs physical examinations of a party.

■ In accordance with Rule 35(a), the court may order a physical examination when the physical condition of a party is "in controversy" and "good cause" is shown. *Schlagenhauf v. Holder*, 379 U.S. 104, 111, 85 S.Ct. 234, 238–39, 13 L.Ed.2d 152 (1964). The moving party must make an affirmative showing that the condition is genuinely in controversy and that good cause exists for ordering a particular examination. *Schlagenhauf*, 379 U.S. at 118, 85 S.Ct. at 243; *accord Anderson v. Cryovac, Inc.*, 805 F.2d 1, 8 (1st Cir.1986). Although the Federal Rules of Civil Procedure are liberally construed, physical examinations should be ordered only upon a discriminating application of the limitations of the Rule. *Schlagenhauf*, 379 U.S. at 121, 85 S.Ct. at 244; *accord Cody v. Marriott Corp.*, 103 F.R.D. 421, 422 (D.Mass. 1984); *R.R.K. v. S.G.P.*, 400 Mass. 12, 507 N.E.2d 736, 740 (1987). "[S]weeping examinations of a party who has not affirmatively put into issue his own mental or physical condition are not to be automatically ordered merely because the person has been involved in an accident...." *Schlagenhauf*, 379 U.S. at 121, 85 S.Ct. at 244; *accord Cody*, 103 F.R.D. at 422.

Defendants assert that by seeking future damages, plaintiff placed his life expectancy directly in controversy. Defendants also argue that because plaintiff engaged in activities that place him in a higher risk category than the average person for contracting AIDS, defendants have shown good cause for compelling plaintiff to submit to a blood test during a medical examination.

■ This court acknowledges defendants' position that if plaintiff has AIDS, plaintiff's life expectancy will likely be shorter than for a person who does not have AIDS. Nevertheless, the relevance of the results from a compelled blood test to plaintiff's cause of action is too attenuated. In essence, defendants are asking this court to take extraordinary measures because plaintiff's admitted lifestyle is relevant to the possibility that plaintiff might be infected with AIDS, which is relevant to plaintiff's life expectancy, which is relevant to future damages in plaintiff's underlying cause of action. Defendants essentially seek to engage in "wholly exploratory operations in the vague hope that something helpful will turn up." *See Mack v. Great Atlantic & Pacific Tea Co.*, 871 F.2d 179, 187 (1st Cir.1989). As such, the information defendants seek, which is not yet in existence, is not relevant under Rule 26 and this court exercises its discretion to limit defendants' discovery.

■ Alternatively, this court disagrees with defendants' contention that plaintiff placed his life expectancy "in controversy" as required by Rule 35(a).

Bridgestone cites several actions filed against G.D. Searle & Co. ("Searle") in which the court required the plaintiff to submit to a blood test. (Docket Entry # 113). In each case, the plaintiff sued Searle, the manufacturer of an intrauterine device ("IUD"), alleging that the IUD manufactured by Searle caused the plaintiff to contract pelvic inflammatory disease ("PID").

The blood tests in the *Searle* cases, however, were required in order to determine the exact cause of PID. Thus, the results of the blood tests were relative to *causation* which the plaintiffs placed in controversy by virtue of bringing the lawsuits. In contrast, in the instant action defendants seek the blood test to determine future damages, not liability. The *Searle* cases cited by defendants are distinguishable inasmuch as plaintiff is not claiming that the accident caused him to acquire HIV. Therefore, by seeking future damages, plaintiff has not placed his HIV

**432**

status in controversy for purposes of Rule 35(a).

In order to comply with Rule 35(a), defendants must also show good cause for requesting a medical examination. Defendants assert that the information obtained from discovery, regarding the high risk factors pertaining to plaintiff's possible HIV status, prompted them to seek a blood test. (Docket Entry # 91).

In support of establishing good cause, defendants refer to several cases where the court either compelled the production of documents containing plaintiffs' HIV status despite the plaintiffs' privacy interests or ordered the disclosure of the identity of an HIV positive individual so that the defendants could depose that individual. None of these cases are particularly relevant to the issue now before this court because each case deals with HIV information and/or documents *already in existence*. These cases do not establish "good cause" for purposes of Rule 35(a). In the instant action, defendants seek to compel plaintiff to *create* HIV information so that defendants may then discover it. While this court sympathizes with defendants' efforts to prepare a comprehensive defense to plaintiff's future damage claims, the extraordinary relief defendants seek stretches beyond the parameters of Rule 35(a).[4]

The only favorable precedent cited by defendants is an Order entered by the district judge in *Pettyjohn v. Goodyear Tire and Rubber Co. et al.*, 1992 WL 105162 at *1 (E.D.PA.1992). On a similar set of facts,[5] the district judge ordered plaintiff to either submit to a blood test for purposes of determining HIV status or be precluded from claiming future damages.

■ This court respectfully declines to follow the *Pettyjohn* case inasmuch as it is outside this district. Moreover, in a related case in this district, *Chase v. Barber–Greene Company*, the district judge denied by Endorsed Order the defendant's motion to compel the plaintiff to submit to a blood test to determine the plaintiff's HIV status. (Docket Entry # 94, Ex. A). The defendant in *Barber–Greene* relied on the fact that the plaintiff was previously an intravenous drug user to establish good cause.[6] Thus, although unpublished, *Barber–Greene* concerns virtually the identical issue faced by this court.[7]

Defendants in the instant case submit that "while [the district court judge] denied the motion, he did order that certain evidence would not be admitted at trial should the plaintiff continue to refuse to voluntarily submit to such a blood test." (Docket Entry ## 104 & 113). There is nothing in the defendant's motion to compel filed in *Barber–Greene* to indicate the accuracy of this statement. In fact, the defendant in *Barber–Greene* never requested such alternative relief from the court.[8] (Docket Entry # 94,

---

**4.** Since defendants do not meet their burden relative to Rules 26 and 35, there is no need for this court to address the legitimacy of plaintiff's statutory and constitutional privacy arguments.

**5.** In *Pettyjohn*, the plaintiff allegedly sustained serious injury from an explosion that occurred while the plaintiff was mounting a tire on a rim. There is some question, however, as to whether the plaintiff had taken a blood test at some point in the past and tested positive for HIV, as noted by plaintiff (Docket Entry # 94).

**6.** The plaintiff in *Barber–Greene* later withdrew his objection to the defendant's motion to compel and voluntarily submitted to a blood test.

**7.** "Unpublished decisions have no precedential value in this circuit and may not be cited by the Court *except* in related cases." *McKenney v. Sullivan*, 743 F.Supp. 53, 58 (D.Me.1990) (citing

*Bachedler v. Communications Satellite Corporation*, 837 F.2d 519, 523 & n. 5 (1st Cir.1988)) (emphasis added). "The reasons for this rule are that unpublished opinions generally do not disclose their rationale, and they are not equally available to the parties." *McKenney*, 743 F.Supp. at 58 n. 3. The factual circumstances of *Barber–Greene* are strikingly similar to the issues faced by this court. Moreover, both parties had access to the *Barber–Greene* decision and cite to the decision in their briefs. This court therefore finds guidance in the decision.

**8.** In the event defendants can support their representation with documentary evidence, defendants may renew their motion to compel. This court is not inclined, however, to order an HIV blood test even with additional documentary evidence. Such evidence would only support defendants' request to exclude evidence of plaintiff's life expectancy which should be addressed to the trial judge.

Ex. A). More importantly, the discretion to preclude admission of evidence properly lies with the trial judge.

## CONCLUSION

In accordance with the foregoing discussion, Budd's motion to compel (Docket Entry # 90) is **DENIED.**