783 So.2d 497 (2001)
Tannia HARGRAVE
v.
Dohlman BROWN and Maintaining Total Control, Inc.
No. 00-C-1082.
Court of Appeal of Louisiana, Fifth Circuit.
March 22, 2001.
Writ Denied June 1, 2001.
*499 Marianne S. Pensa, Buckley & Hayes, L.L.P., New Orleans, LA, Marion D. Floyd, Kenner, LA, Attorneys for Dohlman Brown.
Dennis S. Mann, Michelle D. Robert, Howard, Laudumiey, Mann, Reed & Hardy, New Orleans, LA, Attorneys for Tannia Hargrave.
Panel composed of Judges CANNELLA, EDWARDS and CIACCIO, Pro Tempore.
JAMES L. CANNELLA, Judge, Pro Tem.
Defendant, Dohlman Brown, sought writs from the trial court ruling in favor of Plaintiff, Tannia Hargrave, on her Motion and Order for Defendant to Provide Blood Sample for DNA Test Comparison. When originally before us, we denied the writ application upon finding no error in the trial court ruling in which Defendant was ordered to submit the sample with a protective order restricting dissemination of the information obtained from the test. Hargrave v. Dohlman, 00-1082 (La.App. 5th Cir.5/31/00).
Defendant, thereafter, filed his writ application with the Louisiana Supreme Court. On October 13, 2000, that Court granted the writ for the purpose of remanding the case to this Court for briefing and opinion. Pursuant thereto, this Court issued an Order on October 23, 2000, granting briefing times for both parties. Following the filing of briefs and submission of the case for decision, we have considered the briefs, memorandum, the full record and the applicable law and find no error in the trial court ruling ordering Defendant to submit a biological sample for DNA comparison testing with a protective order restricting dissemination of the information obtained from the test.
Plaintiff was an employee and executive director of Maintaining Total Control, Inc. (MTC), a company which provides in-home crisis support intervention to individuals with developmental disabilities and mental health needs. Plaintiff was employed as Defendant's administrative assistant. After working at MTC for about 6 months, Plaintiffs employment was terminated for the stated reason that she failed to follow supervisor directions. Shortly thereafter, Plaintiff filed the instant suit against Defendant and MTC alleging damages from discriminatory discharge following incidents of sexual harassment and abuse. Among the allegations, Plaintiff contends that one night, while working late, Defendant called Plaintiff into his office, sat next to her on the sofa and made suggestive sexual remarks. When Plaintiff tried to leave, Defendant "restrained her, laid on top of her, undid his pants, and masturbated all over her." It is alleged that Defendant threatened to terminate Plaintiffs employment if she reported the incident. In connection with this incident, Plaintiff contends that she has the skirt which she was wearing that night and it contains the semen of Defendant.
As part of discovery, Plaintiff requested a biological sample from Defendant, either by blood or cheek swab, for DNA comparison testing with the stain on her skirt. Defendant, although it is alleged that he initially agreed to give the sample, has now refused. Plaintiff filed a motion to compel Defendant to provide the sample and requested that the court order Defendant to give it. Defendant opposed the motion. The trial court ruled in favor of Plaintiff, ordering Defendant to give the sample. *500 The trial court also issued a protective order prohibiting the distribution or use of the results outside of the lawsuit and requiring that the results be filed under seal. It is from this ruling that Defendant sought writs.
The question of whether a plaintiff may compel a defendant in a sexual harassment case to submit to DNA testing is res nova under Louisiana law. However, in a related area, the Louisiana Supreme Court has upheld a trial court order compelling litigants in a succession proceeding to give blood samples where paternity was at issue in the case. Succession of Robinson, 94-2229 (La.5/22/95), 654 So.2d 682; Sudwischer v. Estate of Hoffpauir, 91-0515 (La.10/31/91) 589 So.2d 474.
In Succession of Robinson, the Court provided the analytical framework with which to consider a motion to compel a blood sample. The Court stated:
In resolving this issue, we must first determine whether, under the circumstances, authority exists for ordering the requested blood tests. If so, whether competing constitutional interests weigh in favor of permitting such testing. Finally, if testing is permissible in this case, whether procedural safeguards are necessary to protect the constitutional rights implicated.
We find that the same analysis is applicable to the instant case.
As noted in Succession of Robinson and Sudwischer, La. C.C.P. art. 1422 authorizes the discovery of any matter not privileged which is relevant to the subject matter involved in the pending action. There can be no doubt that a comparison of the DNA of the Defendant to that of the semen on Plaintiff's skirt is relevant to the subject matter involved in the instant case. Thus, La. C.C.P. art. 1422, considered with the relevancy of the information sought, gives the trial court the authority for ordering the requested test.
Next, we must consider whether the competing interests weigh in favor of permitting the test. Defendant's privacy rights must be weighed against the State's interest in providing a reasonable means or forum for its citizens to resolve disputes, in regulating litigation in the courts, and in protecting its citizens from discrimination and harassment in the workplace.
We note, as did the Court in Robinson, that the intrusion to Defendant is minimal. He may give either a blood or a cheek swab sample. He has alleged no medical or religious reasons for his refusal to give the sample. In comparison, our Legislature has enacted certain rules of procedure governing court cases to further the ends of justice by arriving at the truth through the litigation process. Further, the State has a compelling State interest in protecting its citizens against discrimination, in the form of sexual harassment as well as others, in the work place. In this case the trial court also issued a protective order limiting the use of the information to this case alone and ordering it filed under seal. Considering the competing interests involved herein, we conclude that the State's interest in providing a forum for dispute resolution, in regulating litigation in the courts, and in protecting its citizens in the workplace outweighs the minimal intrusion on Defendant's privacy rights.
Finally, we must consider whether procedural safeguards have afforded Defendant due process before the blood test can be compelled by court order. In this regard, the Court in Succession of Robinson was most concerned with the risk of erroneous deprivation of one's privacy interests. The Court held that a peremptory order would not provide the necessary safeguards. Rather, it is required *501 that the party seeking to compel the test must establish a prima facie showing of the reasonable possibility of a match (or non-match depending on the party seeking the test and the reasons) before obtaining the requested order. We find that Plaintiff herein has made a sufficient showing.
First, plaintiff filed a verified petition in the trial court with the specific detailed allegations of sexual harassment and abuse. Second, the record contains Plaintiff's sworn deposition testimony about numerous, specific and detailed instances of sexual harassment and abuse perpetrated upon her by Defendant. The deposition includes reference to the names of several people who might have information about the incidents, including another woman who may have also been sexually harassed by Defendant. Plaintiff also refers in her deposition to two instances in which she called the police to report harassing incidents. Further, in response to defense discovery, Plaintiff has produced and turned over the skirt with the alleged semen on it to the defense for testing. And, finally, it is important to note that in interrogatories, Defendant has denied any sexual relations with Plaintiff, consensual or not. This rebuts Defendant's contention that a match would not evidence wrongdoing. Defendant was provided notice and an opportunity to be heard before the trial court ruled on the matter. Thus, we find that the production of Plaintiff's skirt with alleged semen on it, coupled with Plaintiffs sworn detailed statements, with witnesses names and verifiable police reports, provides a sufficient showing to meet Plaintiffs burden of proving a prima facie case before obtaining the requested order. Further, the trial court issued a protective order limiting the use of the DNA information to this case only and ordering it filed under seal.
Therefore, following the principles of Succession of Robinson and the facts provided in this case, we find no error in the trial court ruling, with the attendant protective order, compelling Defendant to submit a biological sample for DNA comparison testing. The ruling of the trial court is affirmed.