Robert HARRIS and Linda
Harris, Plaintiffs,

v.

ATHOL–ROYALSTON REGIONAL SCHOOL DISTRICT COMMITTEE, Penelope Kleinhans, Individually and In Her Capacity As Superintendent of Schools and Steven Buxton, Paul Guimond and Carla Rabinowitz, Individually and In Their Capacities As Members of the Athol–Royalston Regional School District Committee, Defendants.

Civ.A. No. 99–40164–NMG.

United States District Court,
D. Massachusetts.

April 4, 2002.

Jack J. Canzoneri, Newton, MA, Vida K. Berkowitz, McDonald & Associates, West Newton, MA, for plaintiffs.

John Foskett, Tammy L. Richardson, Anthony Dimperio, Deutsch, Williams, Brooks, DeRensis, Holland & Drachman, Boston, MA, Peter Berry, Deputy Gen. Counsel, Bruce G. Von Rosenvinge, Francis S. McGurrin, O'Brien & Von Rosenvinge, P.C., Wellesley, MA, for defendants.

Joseph G. Sandulli, Sandulli, Grace, Shapiro & Horwitz, Boston, MA, interested party.

## *ORDER*

SWARTWOOD, United States Magistrate Judge.

### *Nature of the Proceeding*

The following motions have been referred to me for disposition:

1. Plaintiff's Motion For Order To Compel Production Of Fingerprint And DNA Exemplars And Adjustment To Scheduling Order (Docket No. 66); and

2. Defendant Penelope Kleinhans' Motion For Adjustment For Scheduling Order For The Limited Purpose Of Concluding Depositions (Docket No. 78).

### *Background*

This is essentially a civil rights action in which Plaintiffs allege that Defendants, their agents and employees, have engaged in continuing retaliation against them for their commencement of a prior lawsuit, subsequently settled against the Athol–Royalston Regional School District ("School District"). The alleged retaliation includes, among other things, the anonymous delivery of a packet of documents to a columnist of the *Athol Daily News* on or about June 7, 1999. The packet contained portions of Mr. Harris' personnel records which are maintained by the School District as his employer. The materials also included handwritten comments and other markings, an anonymous hand-printed cover letter and other materials containing what appeared to be disguised handwriting. Mr. Harris has alleged that the packet was sent to the *Athol Daily News* by an employee or agent of the School District who had access to the documents produced, including the individual Defendants and other specified individuals. *The Athol Daily News* then printed some of this material which Plaintiffs allege was inaccurate, defamatory and intended to harass and intimidate Mr. Harris. Plaintiffs maintain that the identity of the person who sent the packet to the *Athol Daily News* is relevant to the issues of retaliation alleged by Plaintiffs in this Complaint.

I previously ordered, *see* Order dated April 20, 2001 ("Prior Order"), that handwriting exemplars be obtained from the following individual Defendants in this action: Penelope Kleinhans, Steven Buxton, Paul Guimond and Carla Rabinowitz. Additionally, I ordered that handwriting exemplars be obtained from the School District's Assistant School Superintendent, Robert Siminski and employee, Robin Hamlett.

As ordered, numerous documents bearing the known writing of all of the above individuals were obtained and on January 29, 2002, were received by Alan T. Robillard, an Examiner of Questioned Documents, hired by the Plaintiffs. Mr. Robillard identified the six writers whom I ordered to provide exemplars as K1–K6 and he refers to the writing specimens as Q1–Q26.

As a result of Mr. Robillard's examination of the documents delivered to the *Athol Daily News*, he concluded as follows:

1. The questioned writing on specimen Q11 was prepared by Penelope Kleinhans, the K1 writer.

2. The questioned writing on specimen Q14 may have been prepared by Penelope Kleinhans, the K1 writer.

3. The questioned writing on specimen Q14 may not have been prepared by any of the K2 through K8 writers.

4. The star-like markings on specimens Q6, Q24 and Q25 were probably prepared by the same person.

5. The star-like markings on Q7, Q24 and Q25 may have been prepared by the same person.

6. The star-like marking appearing on the right side of specimen Q15 and the Q26 marking may have been prepared by the same person.

7. The star-like marking appearing on the left side of specimen Q15 and the Q26 marking may have been prepared by the same person.

No conclusion can be reached as to whether or not any of the K1 through K8 writers prepared the questioned star-like markings on specimen Q6, Q7, Q15, Q24, Q25 and Q26 due to the highly stylized and unique form of these markings. However, in the event non-requested, normal course of business exemplars from these individuals which contain similar markings are made available for examination, conclusions may be reached as to which, if any of these individuals, prepared the questioned markings.

8. Due to one or more of the following factors: distorted, writing, limited writing, writing that lacks unique characteristics, or poor photocopy quality, it was determined that no conclusion can be reached as to whether or not any of the known writers (K1 to K8) prepared either the questioned writings or markings on specimens Q1, Q2, Q3, Q5, Q8, Q9, Q10, Q12, Q13, Q16, Q17, Q18, Q19, Q21, Q22, Q23, or the non star-like markings on specimen Q15.

*See* Attachment H to Plaintiff's Reply Brief (Docket No. 73).

Several of the documents in the envelope delivered to the *Athol Daily News* contained star-like asterisks. Superintendent Kleinhans denied that she wrote star-like asterisks on two specific documents and could not recall whether she wrote star-like asterisks on a third identified document. Plaintiffs allege that the star-like asterisks found on the documents in the anonymous packet are similar to star-like asterisks found on other discovered business documents, which they believe they can prove are more likely than not those of Superintendent Kleinhans.

### Discussion

The Plaintiffs request that pursuant to Fed.R.Civ.P. 34 or 35, this Court compel those persons who previously were ordered to provide handwriting exemplars to provide fingerprints and DNA exemplars. In support of this request, Plaintiffs argue that whoever compiled the packet, wrote on it and/or sent it to the newspaper is likely to have touched it. The Plaintiffs further argue that a hair and other apparent biological matter were found clinging to the tape used to seal the envelope and that they may belong to whomever sent the packet. Defendants argue that Plaintiffs have failed to satisfy the requirements of Rule 35, that the Plaintiffs have failed to establish good cause, that the discovery requested is excessive, that the request violates the privacy rights of the individuals, that non-parties cannot be compelled to produce such discovery, and that allowing such discovery will unnecessarily prolong this litigation. I will now examine whether Plaintiffs are entitled to discovery of the requested fingerprints pursuant to Fed. R.Civ.P. 34 or 35. I will then discuss the request for DNA samples.

### A. *Fingerprint Analysis:*

■■ The first question presented in this motion is whether or not it is appropriate to order parties and/or non-parties to submit their fingerprints for analysis. Initially, I will determine whether production of such discovery is warranted under Rule 34 or 35. If so, I will then address whether the Plaintiffs have established that discovery is warranted in this case. Rule 34 permits a party to obtain documents and "tangible things which constitute or contain matters within the scope of Rule 26(b)." Fed.R.Civ.P. 34. Rule 35 permits a party to obtain a physical or mental examination of another party or a person under such other party's control where "the mental or physical condition (including the blood group)" of such other party or person is "in controversy". *Id.,* at R. 35. As to Rule 35, discovery should not be had unless the party requesting an examination has established "that each condition as to which the examination is sought is really and genuinely in controversy and good cause ex-

ists for ordering each particular examination." *Schlagenhauf v. Holder,* 379 U.S. 104, 118, 85 S.Ct. 234, 242–43, 13 L.Ed.2d 152 (1964).

The Supreme Court, in *United States v. Euge,* 444 U.S. 707, 100 S.Ct. 874, 63 L.Ed.2d 141 (1980), allowed the IRS to compel a taxpayer to provide a handwriting exemplar. The Court noted that under Common Law, witnesses traditionally had a broad duty to provide "relevant, non-privileged evidence", including non-testimonial physical evidence. In making this ruling, the court noted that traditionally witnesses could be compelled, in both state and federal courts, to submit to "fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture." *Id.,* at 713, 100 S.Ct. at 879, citing *Schmerber v. California,* 384 U.S. 757, 764, 86 S.Ct. 1826, 1832, 16 L.Ed.2d 908 (1966). Although the *Euge* decision was made pursuant to 26 U.S.C. § 7602, which applies in criminal proceedings and civil proceedings that are quasi-criminal in nature, as stated in my Prior Order, I find the Supreme Court's reasoning persuasive in the context of civil discovery.

In *Alford v. Northeast Insurance Co., Inc.,* 102 F.R.D. 99 (N.D.Fla.1984), the court granted an insurance company defendant's motion to compel the production of fingerprints from the plaintiff as support for its affirmative defense that the plaintiff was responsible for the claimed fire damage. The *Alford* court noted that "fingerprints are analogous to voice exemplars in that they are physical characteristics constantly exposed to the public". *Id.,* at 101, citing *Cupp v. Murphy,* 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973). In other words, the *Alford* court concluded that fingerprints and the like are essentially, a "blood group." [1] I agree with the *Alford* court and find that regardless of whether the request is made pursuant to

Rule 34 or 35, a party may obtain the fingerprints of another party or a person under such other party's control upon establishing that such evidence is relevant and further, that there is good cause for obtaining the fingerprints of such other party or person. I will now determine whether the Plaintiffs have established that fingerprint evidence is relevant in this case and, if so, whether they have shown good cause for obtaining the fingerprints of the individuals whom I previously ordered to provide exemplars in this case.

I find that Plaintiffs have established that fingerprint evidence is relevant to this case because it is at least plausible that whoever wrote on the documents and addressed the envelope to the *Athol Daily News* left fingerprints or palm prints thereon. Plaintiffs propose that I order the same individuals from whom handwriting exemplars were obtained in accordance with my Prior Order be fingerprinted in order to determine whether their fingerprints can be found on the anonymous envelope to the *Athol Daily News* or any of the documents sent in that envelope. Mr. Robillard's examination concluded that Superintendent Kleinhans' handwriting matched the handwriting specimens on one or more of the documents sent to the *Athol Daily News.* Therefore, as to Superintendent Kleinhans, I find that Plaintiffs have made a reasonable showing that a comparison of Superintendent Kleinhans' fingerprints and the fingerprints found on the envelope and/or documents sent to the *Athol Daily News* could be relevant to the issue of whether or not Superintendent Kleinhans, in fact, sent the anonymous packet. Therefore, Plaintiffs have established good cause for ordering that Superintendent Kleinhans produce her fingerprints. However, Mr. Robillard could not identify any of the other handwriting specimens on the envelope or documents as that of any of the other individuals.[2] As to these

---

1. The *Alford* court actually ordered such production pursuant to Fed.R.Civ.P. 34 because at that time, Fed.R.Civ.P. 35 applied only to examinations conducted by licensed physicians. That rule has since been amended to permit examinations by a "suitably licensed or certified examiner." *See* Fed.R.Civ.P. 35. Therefore, the *Alford* court's analysis applies whether the request is made pursuant to Rule 34 or Rule 35.

2. Two of the individuals, Mr. Siminski and Ms. Hamlett, have acknowledged during their depositions that their fingerprints very well may be on some of the documents sent to the *Athol Daily News* because they handled them after their delivery to the newspaper. However, Plaintiffs are trying to prove that one of these individuals mailed the envelope to *Athol Daily News* by es-

individuals, I find that the Plaintiffs have failed to establish good cause for them to produce their fingerprints. I will now outline the protocol to be used with respect to the fingerprint analysis.

■ Plaintiffs' fingerprint expert, Robert J. Hazen, has suggested three tests that he would perform to obtain fingerprints from the anonymous packet and its contents. The first test involves the use of a laser; the second test involves application of a chemical called triketophdrindene hydrate (commonly known as "nin-hydrin"); and the third test involves application of silver nitrate. The first two suggested fingerprint tests are nondestructive and would not make it impossible or difficult for subsequent tests to be performed on the envelope or its contents. The third test involving silver nitrate is destructive and would make further fingerprint or DNA testing very difficult. I find that obtaining fingerprints from the anonymous packet and its contents by use of laser and "nin-hydrin" testing is relevant as a method of discovery to determine who may have sent the anonymous packet to the *Athol Daily News.* Therefore, I will allow Plaintiffs' expert, Robert J. Hazen, to perform the laser and "nin-hydrin" tests on the anonymous packet and its contents.

The fingerprinting analysis provided in this Order shall be performed as follows:

1. Plaintiffs' fingerprint expert may perform the tests on the anonymous packet and its contents as provided in this Order, but such tests shall be performed at the Worcester Court. A room will be made available for these tests and the fingerprint expert shall be allowed to take whatever equipment he requires to perform such tests into the Court;

2. Fingerprinting of Superintendent Kleinhans shall be performed by Plaintiffs' expert or someone designated by that expert to perform that function; and

3. Plaintiffs' expert's fingerprint analysis must be made available to the Defendants.

---

tablishing that his/her fingerprints or palm prints appear near the handwriting specimens. Since Mr. Robillard did not conclude that either of these individuals was likely to have written any

### B. *DNA Testing*

■ I must now determine whether or not, under the circumstances of this case, Plaintiffs' proposed DNA testing is appropriate.

Mr. Robillard, when examining the anonymous packet and its contents as part of his handwriting analysis, discovered "what appeared to be a hair and other debris attached to tape that is affixed to the envelope of the anonymous packet..." [and] "biological matter clinging to one of the documents contained in the anonymous envelope." *Exhibit D* to Pl's Memo (Docket No. 67).

First, I must determine whether or not requiring DNA testing of samples taken from the Defendants and other school department employees is beyond the scope of the applicable discovery rules. In *Doe v. Senechal,* 431 Mass. 78, 725 N.E.2d 225 (2000), the Supreme Judicial Court of Massachusetts ("SJC") ordered DNA testing to prove paternity, as this was the only source, aside from the plaintiff's testimony, from which to draw proof of alleged improper sexual contact. Evidence in that case showed that the plaintiff, a court-committed patient at an intensive residential treatment facility for mentally ill adolescents, had, at or near the time of conception, been alone with the staff member who allegedly fathered the child. *Id.* at 80, 725 N.E.2d at 228. The SJC found that under those circumstances, the plaintiff had established that there was a "controversy" warranting an examination under Mass. Rules of Civil Procedure, Rule 35 (Mass.R.Civ.P. is substantially identical to Rule 35, except that it applies only to examinations made by physicians).

The court in *Hargrave v. Brown,* 783 So.2d 497 (La.App.2001), allowed DNA testing in a sexual harassment suit after the plaintiff employee made a prima facie showing of a reasonable possibility that defendant's semen was present on her skirt. The court in that case found that "the production of plaintiff's skirt with alleged semen on it, coupled with

---

of the specimens, I do not find that Plaintiffs have established good cause for requiring that they produce fingerprints.

plaintiff's sworn detailed statements, with witnesses names and verifiable police reports", provided a sufficient showing to meet her burden of proving a prima facie case before obtaining the requested order. *Id.* at 501.

In *Sacramona v. Bridgestone/Firestone, Inc.*, 152 F.R.D. 428, (D.Mass.1993), the court denied a request to have a plaintiff in a personal injury action tested for HIV because it only related to calculation of damages and not liability. Although both Plaintiffs and Defendants claim that *Sacramona* supports their positions, it is notable that the court in that case did not reach a conclusion regarding whether or not the test would have been required had it been relevant to causation. Further, the court discusses at length whether the plaintiff himself had placed his HIV status in controversy by filing suit, suggesting that the decision is even less applicable to the current situation, in which DNA exemplars are requested from Defendants and two non-parties. *Id.* at 431.

I conclude, under the circumstances of this case, that DNA testing is beyond the scope of discovery for the following reasons:

1. DNA testing is an extreme discovery tool which is very intrusive to the targets of such discovery;

2. There is no direct connection linking any of the Defendants to the alleged "hair and other biological matter" on the anonymous envelope or its contents such as is the case where DNA testing is used to determine paternity (e.g., child and putative father);

3. The proposed DNA testing could be destructive to the apparent biological matter; and

4. Since Plaintiffs' suggestion that the hair and other matter belongs to the person who mailed the packet is pure speculation, such discovery is nothing more than a "fishing expedition".

In making the last finding, I want to make clear that I ordered that specified individuals provide handwriting exemplars and that Superintendent Kleinhans provide fingerprints because Plaintiffs were able to establish to my satisfaction, in each case, that it is likely that such individuals may have produced the handwriting/fingerprints which were or may be found on the packet. No such showing has been made as to the hair or other matter found on the packet, that is, other than mere speculation. Plaintiffs have not proffered any basis for concluding that such hair and/or matter belonged to the person who sent the packet, rather than someone who opened the packet, or one of the several individuals who has touched it thereafter.

### C. *Amendment to the Scheduling Order*

The Defendant, Penelope Kleinhans, has requested additional time to complete the deposition of Linda Harris and take the deposition of fact witness, Roberta Newman. Both of these individuals were unable to either complete or have their depositions taken within the time provided in the scheduling order. For good cause, I am allowing that request and extending the fact deposition deadline for these two depositions to April 26, 2002.

Plaintiffs' fingerprint trial expert shall be designated by April 12, 2002 and his/her fingerprinting analysis as provided in this Order shall be completed by May 3, 2002, and a report contemplated by Fed.R.Civ.P. 26(a)(2) shall be provided by May 17, 2002.

A deposition of Plaintiffs' fingerprint expert shall be completed by June 14, 2002. Otherwise, the existing scheduling order remains in force and effect except as provided in this Order.

### *Conclusion*

1. Plaintiff's Motion For Order To Compel Production Of Fingerprint And DNA Exemplars And Adjustment To Scheduling Order (Docket No. 66) is *allowed in part* and *denied in part.*

2. Defendant Penelope Kleinhans' Motion For Adjustment For Scheduling Order For The Limited Purpose Of Concluding Depositions (Docket No. 78) is *allowed.*