Karen M. D'ANGELO, Carol I. Mansani, Plaintiffs,

v.

John E. POTTER, etc., John R. Kelley, Defendants.

Civ.A. No. 01–12227–RBC.

United States District Court, D. Massachusetts.

Oct. 14, 2004.

Barbara Smith Healy, United States Attorney's Office, Boston, MA, for John E. Potter, Defendant.

Gerald F. Blair, Walpole, MA, Richard Heavey, Heavey, Houlihan, Kraft & Cardinal, Brookline, MA, for Karen M. D'Angelo, Carol I. Mansani, Plaintiffs.

Herbert D. Lewis, Lewis & Lewis, Boston, MA, for John R. Kelley, Defendant.

Jeremy M. Sternberg, United States Attorney's Office, Boston, MA, for United States Postal Service, Defendant.

### OPINION AND ORDER ON PLAINTIFF KAREN D'ANGELO'S MOTION TO COMPEL DEFENDANT JOHN R. KELLEY TO SUBMIT [SIC] OR PROVIDE SAMPLES OF HIS DNA FOR TESTING BY DNA ANALYSIS SPECIALISTS AND TO SHOW CAUSE FOR FAILURE TO COMPLY WITH SUBPOENA (# 39)

COLLINGS, United States Magistrate Judge.

#### I. Factual Background

In Count Two of her Second Amended Complaint (# 21), plaintiff Karen D'Angelo ("D'Angelo"), a Postal Service employee, alleges that on September 7, 2000, defendant John R. Kelley ("Kelley"), her supervisor, raped her in the boiler room of the Dorchester Center Postal Station. In her deposition, D'Angelo testified that Kelley demanded that she go with him into the boiler room, she told him that she was not going to, and he told her that if she did not accompany him, she would lose her job. (# 46, Exh. B) She testi-

fied further that once they were in the boiler room, he told her that she had a choice—she must either let him have sex with her or she must perform fellatio on him. She said that she noticed a stool in the boiler room which used to be in the women's rest room but had disappeared sometime earlier. D'Angelo testified that she permitted Kelley to have sex with her because she feared that otherwise she would lose her job; she declined to perform fellatio on him. She testified at her deposition that Kelley ejaculated inside of her.

Kelley denies that he ever had sexual relations with D'Angelo, consensual or otherwise. He further denies that any rape occurred on September 7, 2000. (# 46, Exh. C)

On October 3, 2000, Stephanie L. Smith, a Senior Forensic Chemist with the Postal Inspection Service, took swabs from the boiler room, two of which proved positive for the presence of semen. (# 46, Exh. A) Counsel avers that "[o]ne sampled [sic] was recovered from the stool and one sample was recovered from the floor at the location where Plaintiff stated that the rape occurred." (# 46, p. 1)

## II. Procedural History

Kelley never answered the summons which was served on him on May 22, 2002. A Notice of Default issued on May 20, 2003. See # 28. As of the time Kelley was defaulted, the other defendant in the case, Potter, had filed an answer, and the case against him was proceeding. Since the claims against Potter were based on Kelley's acts as a supervisor employed by the Post Service, the plaintiffs needed discovery from Kelley. On September 29, 2003, Kelley was served with a deposition subpoena at his home at 4 Crescent Terrace, Saugus.[1] He appeared for his deposition on October 2, 2003 at the U.S. Attorney's Office at the John Joseph Moakley United States Courthouse but other than giving his name, invoked his Fifth Amendment privilege as to all questions. See # 45.

The subpoena with which Kelley was served on September 29, 2003 also commanded him to appear at a certain location at 1:00 P.M. on October 2, 2003, after the completion of his deposition, to give a "buccal swab, also

known as a cheek swab and a blood sample." See # 40, Exh. 1. Kelley did not appear at the location.

Thereafter, plaintiff D'Angelo filed the instant motion to compel Kelley to give a DNA sample and to show cause for the failure to comply with the subpoena (# 39). A copy of the pleading was served on Kelley by mail at 4 Crescent Terrace, Saugus. Id. On November 17, 2004, the Court issued a Procedural Order (# 41) directing Kelley to file and serve an opposition to D'Angelo's motion by November 26, 2004 if he, in fact, opposed it. A copy of the Procedural Order was mailed to Kelley at 4 Crescent Terrace, Saugus by the Clerk by both regular mail and certified mail, return receipt requested. The copy sent by regular mail was not returned. However, the copy sent by certified mail was returned with the notation that, despite notices to the addressee on November 19, 2003, November 24, 2003 and December 4, 2003, the certified mail had been "unclaimed."

Kelley did not file any pleading in response to the Procedural Order. On December 17, 2003, the Court issued an Order to Show Cause (# 47) directing Kelley to appear before the Court on December 23, 2003 to show cause why he should not be held in contempt for failure to comply with the subpoena. The Order to Show Cause was mailed to Kelley at 4 Crescent Terrace, Saugus by the Clerk by both regular mail and certified mail, return receipt requested. As happened with the Procedural Order, the copy which was sent by regular mail was not returned by the Post Office. However, the copy sent by certified mail was returned with the notation that, despite notices to the addressee on December 20, 2003, December 25, 2003 and January 4, 2004, the certified mail had been "unclaimed."

Nevertheless, Kelley appeared on December 23, 2003 and, in response to the directive that he show cause, asserted that he had consulted a lawyer, Herbert Lewis, Esquire, who advised him not to obey the subpoena. The Court ordered Kelley to return to Court with Attorney Lewis on January 7, 2004.

---

1. In his Affidavit, Etc. (# 51), Kelley acknowledges service of the subpoena.

On January 7, both Kelley and Attorney Lewis appeared. Attorney Lewis filed an appearance for Kelley and moved to remove the default which was allowed in a Memorandum and Order dated May 17, 2004. *D'Angelo v. Potter*, 221 F.R.D. 289 (D.Mass., 2004). In a separate Memorandum and Order issued the same day, i.e., May 17, 2004, the Court noted that the motion to compel the DNA sample (# 39) was still pending and wrote that:

> ...the Court is of the view that the defendant has waived any objection he may have had to the motion. The Court, in a Procedural Order (# 41) entered on November 17, 2004, gave him the opportunity to file an opposition to the motion. A copy of the procedural order was mailed to him and was not returned by the Post Office.[2] The defendant filed nothing in response to the procedural order. Further, any motion for protective order with respect to the subpoena would be manifestly untimely.

There is only one basis on which the Court will allow further briefing. If the defendant is of the view that the Court has no *power* to issue an order compelling the DNA sample given the facts of this case, he shall file and serve a memorandum of law in opposition to the motion on that basis *on or before the close of business on Monday, June 7, 2004*. The defendant shall file and serve a memorandum *only* directed to the issue of the Court's power and *only* if counsel for the defendant, consonant with the provisions of Rule 11(b)(2), Fed.R.Civ.P., can make an argument that the Court has no power to compel the defendant to submit to the giving of a DNA sample. The Court will not entertain any arguments that, in its discretion, it should not order the defendant to provide a DNA sample. The memorandum shall contain citations to caselaw which support counsel's position.

Attorney Lewis filed a Memorandum, Etc. (# 66) on June 4, 2004 and counsel for D'Angelo filed a Memorandum, Etc. (# 70) on June 16, 2004.

**2.** The copy sent by certified mail, return receipt requested, was returned "unclaimed" after three separate notices were left at the defendant's correct home address.

## III. Discussion

Kelley's argument is that the only basis which the Court would have to order him to provide a DNA sample is found in Rule 35(a) of the Federal Rules of Civil Procedure. That Rule provides, in pertinent part:

> **(a) Order for Examination.** When the mental or physical condition (including the blood group) of a party...is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a suitably licensed or certified examiner... The order may be made only on motion for good cause shown and upon notice to the party to be examined and all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.

Kelley argues, based on the case of *Schlagenhauf v. Holder*, 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964), that his DNA is not "in controversy" as that phrase is used in the Rule, and that "good cause" has not been "shown" for an examination of his DNA.

■ It is difficult to apply the *Schlagenhauf* holding to the instant case because it dealt with medical and physical examinations, not the taking of samples of bodily fluids or buccal swabs.[3] However, it seems plain that for an order to issue for a party to give a blood sample or a DNA sample, the "blood group" or the "DNA" must be "in controversy" as the term is used in the Rule and that there must be good cause for the issuance of the order. As the Court in *Schlagenhauf* wrote, these requirements

> ...are not met by mere conclusory allegations of the pleadings—nor by mere relevance to the case—but require an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination.

*Schlagenhauf*, 379 U.S. at 118, 85 S.Ct. 234.

The most comprehensive review of the law as to whether a litigant in a civil case can be

**3.** The addition of the phrase "including the blood group" did not occur until 1970.

compelled to provide a sample for DNA testing can be found in the case of *McGrath v. Nassau Health Care Corp.*, 209 F.R.D. 55 (E.D.N.Y., 2002). I agree with Magistrate Judge Wall's analysis and will apply the standards he employed to the facts in the instant case.

■ First, evidence as to whether or not Kelley's DNA matches the DNA of the semen specimen found in the boiler room is clearly "relevant" to D'Angelo's "claim" that Kelley raped her. Rule 26(b)(1), Fed.R.Civ. P.; *McGrath*, 209 F.R.D. at 61.

Second, I find that the intrusion on Kelley's privacy in providing the sample is "minimal" consisting of allowing a technician to swab the inside of his cheek to obtain the sample. *McGrath*, 209 F.R.D. at 61 citing *Hargrave v. Brown*, 783 So.2d 497 at 500 (La.Ct.App.2001). In addition, "...the imposition of appropriate protections that limit the use of the DNA information [will] sufficiently address[ ][any] privacy concerns." *McGrath*, 209 F.R.D. at 61.

Judge Wall discounts Magistrate Judge Swartwood's statement in the case of *Harris v. Athol–Royalston Regional School Dist. Comm.*, 206 F.R.D. 30, 35 (D.Mass.2002) that "DNA testing is an extreme discovery tool which is very intrusive to the targets of such discovery." *McGrath*, 209 F.R.D. at 61. I do not think Judge Swartwood was referring to the manner of taking the sample. Rather, he was saying that it is an "extreme *discovery* tool" in that it is only in a very few cases where, as a matter of discovery in a civil suit, litigants are required to provide such a sample.

Indeed, that seems to be the case. An example is Magistrate Judge Bowler's decision in the case of *Sacramona v. Bridgestone/Firestone, Inc.*, 152 F.R.D. 428 (D.Mass.1993) in which Judge Bowler denied a request for a compelled blood test to determine if a plaintiff had AIDS which, if he did, would have given the defendant a basis on which to argue that future damages should be less because of plaintiff's shortened life expectancy. Judge Bowler found that "...the relevance of the blood test to plaintiff's cause of action [was] too attenuated." *Sacramona*, 152 F.R.D. at 431. Providing

samples of bodily fluids or cells in civil litigation is so unusual that, indeed, the parties to civil litigation would very well feel that being required to give such samples is "very intrusive."

Third, D'Angelo "...has made a prima facie showing of a reasonable possibility of a match." *McGrath*, 209 F.R.D. at 61. Two of the swabs that the forensic chemist took from the boiler room proved positive for semen. Further, based on her testimony as to what occurred in the boiler room less than a month before the swabs were taken, she has shown a reasonable possibility of a match. *McGrath*, 209 F.R.D. at 62. There is nothing in the record in the instant case to indicate that other persons used the room for sex during the interval, or that the boiler room was commonly used for such purposes.

The showing which D'Angelo made in this case contrasts with the type of showing which was deemed insufficient in the *Harris* case. In that case, the plaintiff wanted a DNA sample from the defendants to compare with the DNA of a strand of hair found on an envelope in which certain of plaintiff's personnel records had been sent to a newspaper. Judge Swartwood allowed a motion for an order that the defendants be fingerprinted and provide handwriting exemplars "...because Plaintiffs were able establish to [his] satisfaction, in each case, that it is likely that such individuals may have produced the handwriting/fingerprints which were or may be found on the packet." *Harris*, 206 F.R.D. at 35. However, as to the DNA sample to compare to the hair, Judge Swartwood wrote:

> No such showing has been made as to the hair or other matter found on the packet, that is, other than mere speculation. Plaintiffs have not proffered any basis for concluding that such hair and/or matter belonged to the person who sent the packet, rather than someone who opened the packet, or one of the several individuals who has touched it thereafter.

*Harris*, 206 F.R.D. at 35.

In the instant case, D'Angelo has proffered an evidentiary basis for concluding that the semen belonged to Kelley.

304

Fourth, on the basis of what the Court has already recited, "good cause" has been shown. In addition, there is no other means by which D'Angelo can prove that the semen is that of Kelley. *Johnson v. City of Ecorse,* 137 F.Supp.2d 886, 894 (E.D.Mich.2001). The evidence, unlike that in the *Sacramona* case discussed, *ante,* goes directly to the question of liability and is not just relevant on the question of the extent of damages. Lastly, the evidence is not being sought solely for purposes of impeachment. *McGrath,* 209 F.R.D. at 63–64.

### IV. Conclusion and Order

The Court finds that D'Angelo has established that she is entitled to an order requiring Kelley to provide the sample and that the Court has the power to issue such an order. Thus, it is ORDERED that Plaintiff Karen D'Angelo's Motion to Compel Defendant John R. Kelley to Submit [sic] or Provide Samples of his DNA for Testing by DNA Specialists and to Show Cause for Failure to Comply with the Subpoena (# 39) be, and the same hereby is, ALLOWED to the extent that a separate Order as sought by D'Angelo shall issue. Kelley faces prosecution for criminal contempt if he fails to obey the Order after it is issued.